### Petition for Naturalization of Jose Ocampo TUBIG in Behalf of Diosdado Isip TUBIG.

No. 277739.

United States District Court, N.D. California.

Oct. 7, 1981.

No appearance for petitioner.

James Richman, Immigration & Naturalization Service, San Francisco, Cal., for respondent.

## OPINION

ORRICK, District Judge.

The Immigration and Naturalization Service ("INS") moves for reconsideration of this Court's order of June 24, 1981, requiring the INS to grant petitioner's request for naturalization of his son under 8 U.S.C. § 1433(a). Because petitioner's failure to complete the application process before his son reached the cut-off age of eighteen was due to the INS' failure to follow its own regular procedures in cases of this sort, this Court holds that the INS is estopped from denying petitioner's application on that basis. The INS' motion for reconsideration is, therefore, denied.

Petitioner, Jose Ocampo Tubig, filed a petition for naturalization on behalf of his son, Diosdado Isip Tubig, on February 14, 1981, three months before Diosdado's eighteenth birthday. Section 322 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1433(a), permits a child under the age of eighteen born outside of the United States at least one of whose parents is a citizen of the United States to be naturalized on the petition of the citizen-parent. A person naturalized under § 1433(a) need not meet many of the requirements for naturalization—such as language, residence, and physical presence requirements—imposed upon those who seek naturalization under other provisions of the Code. *See* 8 U.S.C. § 1423. Thus, qualifying for naturalization under § 1433(a) can be of substantial importance to applicants for naturalization. Knowing this to be the case, the INS, where application for naturalization under § 1433(a) is made a relatively short time before the child's eighteenth birthday, regularly expedites the application so that it may be completed, and naturalization accomplished, before the child's eighteenth birthday. Due to an INS clerk's error, however, petitioner's application was not expedited, and when his son turned eighteen before the petition had been completely processed, the INS denied his application on that basis. Petitioner appealed the denial to this Court, which ordered the INS to grant petitioner's application on the ground that the INS is estopped from denying petitioner's application due to a change in status arising from the INS' own error. This petition for reconsideration of that order followed.

In *Villena v. INS,* 622 F.2d 1352 (9th Cir.1980), the court held that an unexplained and lengthy delay in processing an applicant's petition for naturalization amounts to "affirmative misconduct" which operated to estop the INS from deporting petitioner due to a change in his status which arose from the delay. Similarly, in *Sun Il Yoo v. INS,* 534 F.2d 1325 (9th Cir.1976), the court found that an unjustified delay by the INS in recognizing petitioner's special immigration status estopped the INS from denying the application of a petitioner who had otherwise acted in good faith. Immigration agents need not inform aliens of requirements the aliens should have known of themselves, ruled the court, but "once an alien has gathered and supplied all relevant information and has fulfilled all requirements, INS officials are

**4**

under a duty to accord to him within a reasonable time the status to which he is entitled by law." *Id.* at 1328–29. Petitioner in the instant case has substantially complied with the INS' requirements for application for naturalization; petitioner's application shows that all of the information needed by the INS to process the application was provided, and the INS makes no claim that petitioner's application would not have been approved had it been completed in timely fashion. Thus, but for the INS' error in failing to expedite the application, as was its usual practice, petitioner's son would have been naturalized. Equitable principles do not require this Court to approve the denial of the naturalization of petitioner's son due to an error of the INS' own making; this Court, therefore, holds that the INS is estopped from denying the application.

The INS argues that it should not be estopped from denying petitioner's application because petitioner (1) failed to appear at a preliminary hearing on December 4, 1980, attendance at which "would have prevented the problem [of INS' failure to notice the need for expediting the application] from arising"; (2) may, by having left the country for a short visit to the Philippines during the pendency of his application, have ceased to be a citizen residing in the United States, as required by § 1433(a) for naturalization through a citizen-parent; and (3) left the country before the final hearing on the application, and thus could not remind the INS of the need for an expedited processing of his application.

■ Arguments (1) and (2) are not supported by the factual record presented to this Court: the importance of the missed meeting is never made apparent; the INS in its motion devotes only a single sentence to it, and does not claim that information it needed to process petitioner's application was withheld. Nor is the INS' suggestion that petitioner's visit to the Philippines may have been an abandonment of United States residency supported by any facts offered by the INS. Indeed, in *Graham v. Houseman,* 654 F.2d 729 (9th Cir.1981), a similar situation arose in which the petitioner left the United States for a two-week period during the pendency of her application for permanent residency status. The INS without investigation interpreted this absence to be an abandonment of the application, but the court reversed, finding that the INS' failure to investigate the significance of petitioner's departure made estoppel particularly appropriate. Slip op. at 3. Because the INS in the present case similarly failed to investigate the significance of petitioner's absence, estoppel is appropriate here as well.

■ Although the cases cited above arose in the context of deportation rather than naturalization proceedings, the equitable principle invoked seems applicable to naturalization proceedings as well, for unjustified delay by the INS in this context can also have serious practical consequences for aliens who, acting in good faith, rely upon its adherence to its procedures. The INS is entitled—indeed, is required—to enforce the statutory requirements under which it operates. It may not, however, by reason of its own unjustified delay or error, cause an alien to run afoul of regulations upon which the INS then relies in denying the alien the status to which he is entitled. The equity powers of the district court do not require it to approve such treatment, and it is upon those powers that this Court relies in denying the INS' motion for reconsideration of this Court's order of June 24, 1981.