**Ryan HARRIOTT and Sariel Harriott**

v.

**John ASHCROFT, et al.**

**No. CIV.A.01–CV–5823.**

United States District Court,
E.D. Pennsylvania.

July 1, 2003.

---

Joseph Hohenstein, Nationalities Service Center, Philadelphia, PA, for Ryan Harriott, Sariel Harriott.

Richard M. Bernstein, Seth Weber, Virginia A. Gibson, U.S. Attorney's Office, Philadelphia, PA, for John Ashcroft, Charles Zemski, Robert Wieman.

### *MEMORANDUM AND ORDER*

KAUFFMAN, District Judge.

Petitioners Ryan Harriott ("Ryan") and Sariel Harriott[1] ("Ms. Harriott") initiated the above-captioned action against Respondents John Ashcroft, Attorney General of the United States, Charles Zemski, Acting District Director of the Philadelphia Office of the Immigration and Naturalization Service ("INS"), and Robert Wieman, Director of the Administrative Appeals Unit of the INS, by filing a Complaint for Declaratory Judgment and a Petition for Writ of Mandamus. The Court subsequently granted Petitioners leave to amend the Complaint to include a claim for habeas corpus relief pursuant to 28 U.S.C. § 2241. Now before the Court are Respondents' Motion to Dismiss and Petitioners' Motion for Judgment on the Pleadings. The Court has given notice to the parties that, pursuant to Federal Rule of Civil Procedure 12, these Motions will be treated as cross-motions for summary judgment under Federal Rule of Civil Procedure 56. (*See* Order dated May 13, 2003.)[2] For the following reasons, the Court will deny Respondents' Motion and grant Petitioners' Motion. Accordingly, the Court will order Respondents to approve the Application for Derivative Citizenship *nunc pro tunc.*

---

1. Sariel Harriott is Ryan's natural aunt and adoptive mother.

2. Fed.R.Civ.P. 12 provides in relevant part:
   (b) ... If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
   (c) ... If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
   Fed.R.Civ.P. 12.

The Court will also award Petitioners attorney's fees and costs pursuant to the Equal Access to Justice Act.

## I. *Background*

The pertinent facts are not disputed. Ryan was born in Jamaica on May 18, 1980 and entered the United States on a valid non-immigrant visitor's visa on July 15, 1992, when he was twelve years old. Soon after, Ms. Harriott took him into her home because he had been abandoned by his natural parents. On May 10, 1996, Ms. Harriott legally adopted Ryan who was then fifteen years old. On March 20, 1997, Ms. Harriott became a naturalized citizen and two months later, on May 23, 1997, she applied for a Certificate of Naturalization for Ryan pursuant to the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1433(a) (the "Application" or the "Application for Derivative Citizenship").[3]

Ryan reached the age of eighteen on May 18, 1998, *almost one year* after the Application for Derivative Citizenship was filed. On October 4, 1999, *almost two and a half years* after the Application was filed, the INS denied the Application on the *sole ground* that Ryan was over the age of eighteen at the time of decision and therefore did not qualify for derivative citizenship pursuant to 8 U.S.C. § 1433(a) and the applicable regulation, 8 C.F.R. 322.2(a) (1999).[4]

Ms. Harriott filed an appeal to the INS's Administrative Appeals Unit ("AAU") on October 29, 1999, which was denied on February 24, 2000.[5] On April 24, 2000, the INS issued a Notice to Appear, charging that Ryan had remained in the United States without authorization beyond July 15, 1993, the date his visitor's visa expired. On August 2, 2001, the Immigration Judge

---

**3.** At the time of Petitioners' application, 8 U.S.C. § 1433(a) provided:

A parent who is a citizen of the United States may apply to the Attorney General for a certificate of citizenship on behalf of a child born outside the United States. The Attorney General *shall* issue such a certificate of citizenship upon proof to the satisfaction of the Attorney General that the following conditions have been fulfilled:

I. At least one parent is a citizen of the United States, whether by birth or naturalization;

II. The child is physically present in the United States pursuant to a lawful admission;

III. The child is under the age of 18 years and in the legal custody of the citizen parent;

IV. If the citizen is an adoptive parent of the child, the child was adopted by the citizen parent before the child reached the age of 16 years (except to the extent that the child is described in clause (ii) of subparagraph (E) or (F) of section 101(b)(1) [8 U.S.C. § 1101(b) ]) and the child meets the requirements for being a child under either of such paragraphs. 8 U.S.C. § 1433(a) (1999) (emphasis added).

**4.** At the time of Petitioners' application, the applicable regulation, 8 C.F.R. 322.2(a)(1) required that an individual seeking citizenship pursuant to 8 U.S.C. § 1433(a) must be under the age of eighteen "both at the time of application *and at the time of admission to citizenship*". 8 C.F.R. 322.2(a)(1) (1999) (emphasis added).

**5.** The AAU denied the appeal based on the language of 8 C.F.R. 322.2(a)(1) requiring Ryan to be under age 18 at the time of admission and further stated that Ryan was not a "child" as required under § 1433(a)(4) until May 10, 1998 because pursuant to 8 U.S.C. § 1101(b)(1)(E) an "adopted child" is: "[A] child adopted while under the age of sixteen years if the child has been *in the legal custody of, and has resided with, the adopting parent ... for at least two years."* 8 U.S.C. § 1101(b)(1)(E) (1999) (emphasis added).

The AAU thus concluded that Ryan was not her "child" until he had resided with, and had been in the legal custody of, Ms. Harriott for two years *after* his adoption (i.e., from May 10, 1996 until May 10, 1998) and that the Application was therefore premature until May 10, 1998. (Amended Compl. and Pet., Ex. D, AAU Denial of Appeal, February 24, 2000.)

ruled that Ryan was deportable and granted his application for voluntary departure within sixty days.[6] Ryan filed an appeal with the Board of Immigration Appeals ("BIA") on September 5, 2001, which was dismissed as untimely on July 17, 2002.

Petitioners filed their Complaint for Declaratory Judgment and Petition for Writ of Mandamus in this Court on November 28, 2001. On June 5, 2002, Respondents filed a Motion to Dismiss the Complaint and Petition for Writ of Mandamus. On June 21, 2002, Petitioners responded to Respondents' Motion and filed their own Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). On September 11, 2002, Petitioners moved to amend their complaint to include a request for habeas corpus relief.[7] On September 19, 2002, this Court granted Petitioners leave to file an Amended Complaint and granted Petitioners' unopposed Motion to Stay Removal pending resolution of this matter. On October 2, 2002, Petitioners filed an Amended Complaint and Petition which incorporated by reference the entirety of the original Complaint and Petition and the Motion for Judgment on the Pleadings and added a claim for habeas corpus relief pursuant to 28 U.S.C. § 2241. Respondents filed their Response to Petitioners' Motion and the claim for habeas corpus relief on March 27, 2003. On April 15, 2003, the Court heard oral argument on the pending Motions. Following the oral argument, the parties submitted supplemental memoranda, Petitioners filed a Petition for Attorney's Fees under the Equal Access to Justice Act, and Respondents filed a Brief in Opposition to the Fee Petition.

## II. *Legal Standard*

In deciding a motion for summary judgment pursuant to Fed.R.Civ.P. 56, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. *Southeastern Pennsylvania Transp. Auth. v. Pennsylvania Pub. Utility Comm'n*, 826 F.Supp. 1506, 1512 (E.D.Pa.1993), *aff'd*, 27 F.3d 558 (3d Cir.1994). The Court must consider the motions independently, *Williams v. Philadelphia Hous. Auth.*, 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd*, 27 F.3d 560 (3d Cir.1994), and examine the evidence in each motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. *Analysis*

### A. Equitable Estoppel

■ The gravamen of Petitioners' Amended Complaint and Petition is that

---

6. The Immigration Judge refused to hear Ryan's claim that his Application for Derivative Citizenship had been wrongfully denied, ruling that he had no jurisdiction over that claim. (Amended Compl. and Pet., Ex. G.)

7. To seek habeas corpus relief pursuant to 28 U.S.C. § 2241, a non-criminal alien must be subject to a final order of removal. *See, e.g., Chmakov v. Blackman*, 266 F.3d 210, 213 (3d Cir.2001). Here, the order of removal was not final until Petitioners' appeal to the BIA was denied on July 17, 2002.

Respondents' actions in denying the Application for Derivative Citizenship were contrary to the express provisions of 8 U.S.C. § 1433(a) requiring them to perform the *ministerial duty* of acknowledging Ryan's citizenship. Petitioners advance several arguments in support of this claim, the most persuasive of which is that Respondents should be estopped from denying Ryan's citizenship because it was their own unreasonable delay and failure to expedite the Application, in contravention of applicable administrative guidelines, that caused Ryan to reach the age of eighteen before naturalization was accomplished.

It is undisputed that the INS's internal guidelines expressly provide for eligibility determination in all cases in less than sixty days and the expedition of applications for children approaching their eighteenth birthday.[8] Further, Respondents fail to dispute that their duty to approve applications for derivative citizenship under 8 U.S.C. § 1433(a) is ministerial rather than discretionary. *See* 8 U.S.C. § 1433(a) ("The Attorney General *shall* issue such a certificate of citizenship upon proof to the satisfaction of the Attorney General that the following conditions have been fulfilled . . .") (emphasis added). Nevertheless, with no explanation for the inordinate delay, Respondents admit that they neglected to act upon Petitioners' Application in any way, including denial or a request for more information, until *after nearly two and a half years had passed.*[9] The Court concludes that, in the interest of justice, Re-

spondents' inexplicable neglect of their *ministerial* duties and disregard for their own internal guidelines demand application of the doctrine of equitable estoppel.

■ To sustain a claim of equitable estoppel against the Government, a petitioner must establish (1) the occurrence of affirmative government misconduct (2) which caused him to reasonably (though erroneously) believe that a certain state of affairs exists (3) upon which he relied to his detriment. *Costa v. INS*, 233 F.3d 31 (1st Cir.2000), *citing OPM v. Richmond*, 496 U.S. 414, 422, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). In a factually similar case, *In re Petition of Tubig*, 559 F.Supp. 2 (N.D.Cal.1981), the court held that because the INS's failure to process a derivative citizenship application before the petitioner's son reached the age of eighteen was due to its disregard for its own regular procedures, the INS was estopped from denying the application on that basis:

> [W]here application for naturalization under § 1433(a) is made a relatively short time before the child's eighteenth birthday, [the INS] regularly expedites the application so that it may be completed, and naturalization accomplished, before the child's eighteenth birthday. Due to an INS clerk's error, however, petitioner's application was not expedited, and when his son turned eighteen before the petition had been completely processed, the INS denied his application on that basis . . . Thus, but for the

---

**8.** The relevant INS internal guidelines provide that "upon receipt of the N–643 [application form], the field office should preliminarily adjudicate the application to determine eligibility *in less than 60 days.*" The guidelines further state: *"immediate priority* shall be accorded applications for children approaching their eighteenth birthday". (Amended Compl., Ex. K.)

**9.** At oral argument, the Court inquired if Respondents' counsel knew of any explanation

for the delay in processing the Application. In their Post-hearing Supplemental Memorandum, Respondents state that "at least some delay" was caused by a mistake regarding Petitioners' change of address. However, they admit that although they have attempted to determine how much time may have been lost as a result of this circumstance, they have been unable to do so. (Respondents' Supp. Mem. at 1).

INS' error in failing to expedite the application, as was its usual practice, petitioner's son would have been naturalized. Equitable principles do not require this Court to approve the denial of the naturalization of petitioner's son due to an error of the INS' own making; this Court, therefore, holds that the INS is estopped from denying the application.

*Tubig*, 559 F.Supp. at 3–4 (citing *Villena v. INS*, 622 F.2d 1352 (9th Cir.1980) (holding that unexplained and lengthy delay in processing an applicant's petition for naturalization amounts to "affirmative misconduct" which operated to estop INS from deporting petitioner due to a change in his status which arose from the delay)); *Sun Il Yoo v. INS*, 534 F.2d 1325 (9th Cir.1976) ("[O]nce an alien has gathered and supplied all relevant information and has fulfilled all requirements, INS officials are under a duty to accord to him within a reasonable time the status to which he is entitled by law.").

Respondents attempt to distinguish *Tubig* by arguing that, in that case, the INS had a *valid* application for ninety days before the applicant's eighteenth birthday. They contend that in this case, the Application was not valid until May 10, 1998, a mere eight days prior to Ryan's eighteenth birthday.[10] They argue that their internal guidelines contemplate sixty days to process a valid application, not eight, and that requiring such a fast turn-around, is "akin to asking the *Queen Elizabeth II* to turn around in two hundred yards." (Respondents' Mem. in Response to Amended Complaint and Petition at 5.) This belated attempt to justify their failure to act provides no explanation for the fact that Petitioners' Application was entirely neglected for not only more than sixty days, but over fourteen times that long—*approximately 840 days*.[11] This unexplained deviation

---

**10.** *See* Note 5 *supra.* As first raised by the AAU in their denial of Petitioners' appeal, Respondents contend that the Application was valid only from May 10, 1998 (2 years from adoption date) until May 18, 1998 (Ryan's eighteen birthday). *See* 8 U.S.C. § 1101(b)(1)(E) (defining an "adopted child" as a "child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent ... for at least two years"). Petitioners have presented substantial evidence, however, that under Pennsylvania law, Ms. Harriott had legal custody of Ryan beginning in 1992. They argue that consequently he met the definition of an "adopted child" under 8 U.S.C. § 1101(b)(1)(E) as soon as he was adopted.

**11.** The Court finds even less persuasive Respondents' claim that all of Petitioners' claims are moot, because Ryan was never entitled to citizenship under 8 U.S.C. § 1433(a) which required that he be "physically present in the United States *pursuant to lawful admission.*" *See* 8 U.S.C. § 1433(a)(II) (emphasis added). Although neither the INS's initial denial of Petitioners' application nor the AAU's denial of the appeal of that decision directly addressed this issue, Respondents now contend that Ryan was not present "pursuant to lawful admission" because his presence in the United States at all times after July 14, 1993 was unauthorized. Petitioners respond that "lawful admission" does not require the continued legality of Ryan's presence, citing the "Definitions" section of the INA, 8 U.S.C. § 1101(a), which provides: "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful *entry* of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Moreover, Respondents have conceded that Ryan was "theoretically eligible to receive a certificate of citizenship between May 10, 1998 and May 18, 1998". (*See* Amended Compl. and Pet., Ex. D, AAU Denial of Appeal, February 24, 2000 ("In other words, you were theoretically eligible to receive a certificate of citizenship between May 10, 1998 and May 18, 1998 (when you turned 18 years of age) had arrangements been made to admit you to citizenship during this limited time span. No such special arrangements were made.")).

from INS internal guidelines placed Petitioners in a position where they could do nothing but rely on a reasonable (but unfortunately erroneous) belief that Respondents would act upon the Application within a year and thus before it was too late for it be approved.

The Court concludes that Respondents should be estopped from denying Ryan's eligibility where but for their own unreasonable and unexplained delay and disregard for internal guidelines, the Application would have been approved. *See Tubig*, 559 F.Supp. at 4. *Cf. Mauting v. INS*, 16 Fed. Appx. 788 (9th Cir.2001). Because Respondents are estopped from denying that the Application should have been granted, and because there are no other disputed facts before the Court, Petitioners are entitled to judgment as a matter of law.

### B. Mandamus

■ Pursuant to 28 U.S.C. § 1361, "[t]he district courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a governmental official who refuses to act. *Donovan v. United States*, 580 F.2d 1203, 1208 (3d Cir.1978). In addition, the Supreme Court has required that a party seeking mandamus show that he has "no other adequate means to attain the relief he desires" and that "his right to issuance of the writ is clear and indisputable". *Stehney v. Perry*, 101 F.3d 925, 934 (3d Cir.1996) (quoting *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (internal citations omitted)); *see also Grant v. Hogan*, 505 F.2d 1220 (3d Cir.1974) ("It is also well recognized that mandamus will lie only when no alternative and adequate remedy is available.").

■ In this case, governmental failure to perform ministerial duties resulted in an Order of Deportation against a young man who was eligible for derivative citizenship. The stringent requirements for mandamus thus have been met. *Cf. Sampson v. Andrus*, 483 F.Supp. 240 (D.S.D.1980) (Mandamus would lie to compel the Secretary of the Interior to consider the plaintiff's application even though the Secretary's acceptance or rejection of the application was discretionary). Indeed, mandamus is the only remedy which is sufficiently flexible to afford the Court the opportunity to rectify governmental neglect and dilatoriness. *See Crawford v. Cushman*, 531 F.2d 1114, 1126 n. 15 (2d Cir.1976) ("Mandamus jurisdiction under 28 U.S.C. § 1361 'permits flexibility in remedy,' so that injunctive and declaratory relief are not inconsistent with its jurisdictional basis.") (quoting *Burnett v. Tolson*, 474 F.2d 877, 883 n. 10 (4th Cir.1973)). Accordingly, the Court will issue a Writ of Mandamus ordering Respondents to approve the Application for Derivative Citizenship *nunc pro tunc*, effective May 17, 1998.

### IV. *Petition for Attorney's Fees and Costs*

#### A. Award under the Equal Access to Justice Act

■ In their Fee Petition, Petitioners contend that if they prevail on their Motion for Summary Judgment, they are entitled to attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The EAJA provides that in an action against the United States or its agents, "a court shall award to a prevailing party other than the United States fees and other expenses … unless the court finds that the position of the United States was substantially justi-

fied or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Comm'r, INS v. Jean*, 496 U.S. 154, 159–160, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

Respondents' failure to consider Petitioners' Application and perform a statutorily-mandated ministerial duty of acknowledging Ryan's citizenship for a period of time fourteen times the length of time contemplated by their internal guidelines cannot be justified and is the sort of unreasonable conduct on the part of a Government institution that the EAJA is designed to address. *See Jean, supra*, 496 U.S. at 163, 110 S.Ct. 2316 ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions.") (internal citations omitted). Accordingly, the Court finds that Petitioners are entitled to an award of attorney's fees and costs pursuant to the EAJA. *See Bruland v. Howerton*, 742 F.Supp. 629, 635 (S.D.Fla.1990).

## B. Calculation of Fees

■ Petitioners contend that their attorney's fees award should be calculated at the rate of $300 per hour based on the prevailing market rates for like services. (Fee Petition, Ex. 1, Affidavit of Joseph C. Hohenstein.) [12] The EAJA provides, that "the amount of fees awarded ... shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attor-

neys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Petitioners argue that a higher fee is justified in this case because they are indigent and their counsel, who works in a non-profit agency, is the only attorney in the Philadelphia area with significant experience in federal court immigration litigation who was willing to represent them at no cost. Respondents counter that the short supply of experienced lawyers is not a basis to depart from the statutory cap and that Petitioners have failed to show that their counsel has some "distinctive knowledge or specialized skill" constituting a special factor. In *Pierce, supra*, the Supreme Court explained:

> [T]he exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the [statutory] cap, reimbursement above that limit is allowed.

*Pierce*, 487 U.S. at 572, 108 S.Ct. 2541.

The Court is satisfied that Petitioners' counsel's "specialized knowledge of immi-

---

12. In his Declaration, Petitioners' counsel avers that in preparation for the Fee Petition he contacted a former law school classmate who also has ten years of immigration law experience and is currently employed by the Dechert law firm. He states that this colleague attested that he would charge $385 per hour for a similar matter. Petitioners' counsel further avers that when he was in private practice four years ago he charged $175–$200 per hour.

gration law, and the limited availability of attorneys who would have taken this case at the statutory rate, are 'special factors' which justify [a reasonable] increase in the rate of pay." *Douglas v. Baker*, 809 F.Supp. 131, 135 (D.D.C.1992). *See also Nadler v. Immigration and Naturalization Service*, 737 F.Supp. 658, 661–62 (D.D.C.1989) (counsel's specialized knowledge of immigration law justified increase above EAJA rate). A rate of $300 per hour in this case would be manifestly reasonable. Moreover, it is undisputed that the costs incurred are $93.66. Accordingly, Petitioners shall be awarded $7,143.66 in attorney's fees and costs.[13]

### V. *Conclusion*

For the foregoing reasons, the Court will deny Respondents' Motion for Summary Judgment, grant Petitioners' Motion for Summary Judgment, issue a Writ of Mandamus and award Petitioners $7,143.66 in attorney's fees and costs pursuant to 28 U.S.C. § 2412(d)(1)(A). An appropriate Order follows.

### ORDER

**AND NOW,** this 1st day of July, 2003, upon consideration of Respondents' Motion to Dismiss the Complaint and Petition (docket no. 5), Petitioners' Motion for Judgment on the Pleadings (docket no. 6), all responses and replies thereto, the oral argument, and all of the evidence presented on the record, **IT IS ORDERED** that:

1. Respondents' Motion is **DENIED.**
2. Petitioners' Motion is **GRANTED.**
3. **JUDGMENT IS ENTERED** in favor of Petitioners and against Respondents.
4. Petitioners' Petition for Writ of Mandamus is **GRANTED.**

5. Respondents are ordered to approve Petitioners' Application for Derivative Citizenship *nunc pro tunc*, effective May 17, 1998.
6. Petitioners are awarded $7,143.66 in attorney's fees and costs pursuant to 28 U.S.C. § 2412(d)(1)(A).

---

**13.** According to the Declaration of Petitioners' counsel, 23.5 hours were expended on this litigation, resulting in total fees of $7050.00. (Fee Petition, Ex. 1.) Pursuant to the 28 U.S.C. § 2412, Petitioners' counsel has only accounted for time spent on the litigation in this Court, not time spent on the collateral immigration proceedings.