REPORTS

OF THE

# UNITED STATES TAX COURT

LEAH M. CARLEBACH AND URIEL FRIED, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 19291–10.               Filed July 19, 2012.

Ps, calendar year taxpayers, and their children resided in Israel during the years in issue. R determined that Ps' children may not be claimed as dependents until they meet the citizenship test specified in I.R.C. sec. 152, as elaborated in sec. 1.152–2(a)(1), Income Tax Regs. Ps argue that the regulation, requiring that children be citizens at some time during the calendar year for which the child is claimed as a dependent, is invalid and that the children qualify as dependents for both dependency exemption deductions and accompanying credits because, at the time the returns were filed, they were citizens. Alternatively, Ps argue that the children possessed derivative citizenship during the calendar years in issue and thus qualified. R disagrees. R disallowed a child care credit claimed by P–W for one year because she did not meet the requirement of filing a joint return. R imposed on Ps accuracy-related penalties and additions to tax for late filing.

1. *Held*: Sec. 1.152–2(a)(1), Income Tax Regs., is valid. Ps could not claim a child as a dependent for calendar years before that child obtained his or her certificate of citizenship.

2. *Held*, *further*, P–W is not eligible for a child care credit for 2008 because she did not file a joint return.

3. *Held*, *further*, penalties and additions to tax are sustained.

1

*Elissa F. Borges*, *Saul B. Abrams*, and *Stuart M. Schabes*, for petitioners.
*Stephen C. Huggs* and *Jeffrey E. Gold*, for respondent.

HALPERN, *Judge*: This case involves two notices of deficiency (together, notices). By the first notice, respondent determined deficiencies, additions to tax, and penalties with respect to petitioners' joint Federal income tax, as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|------------------------------|-------------------|
| 2004 | $4,696 | $424 | $939 |
| 2005 | 6,296 | 595 | 1,259 |
| 2006 | 5,811 | 527 | 1,162 |

By the second notice, respondent determined deficiencies, additions to tax, and penalties with respect to petitioner Carlebach's individual Federal income tax, as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|------------------------------|-------------------|
| 2007 | $5,168 | $523 | $1,034 |
| 2008 | 9,062 | -0- | 1,812 |

The issues for decision with respect to petitioners for 2004 through 2006 are whether, on account of their children, they are entitled to dependency exemption deductions, child care credits, a child tax credit (for 2005), and additional child tax credits; also whether they are liable for additions to tax for late filing and accuracy-related penalties.

After concessions, the issues remaining for decision with respect to petitioner Carlebach for 2007 and 2008 are whether, for 2007, on account of two of her children, she is entitled to dependency exemption deductions and an additional child tax credit; also, for 2007, whether she is liable for an addition to tax for late filing and an accuracy-related penalty and, for 2008, whether she is entitled to a child care credit.

Simplifying somewhat, the denominator common to the deduction and credit issues is whether a child, to qualify as a dependent for a parent's taxable (calendar) year, must be a U.S. citizen or a resident at some time during that year. The answer is "yes".

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.[1] We round all dollar amounts to the nearest dollar.

Petitioners bear the burden of proof. *See* Rule 142(a)(1).[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. Petitioners resided in Israel at the time they filed the petition.

### *Petitioners' Family*

Petitioners have been married since 1990. Petitioner Carlebach was born in 1968 in the United States and is a U.S. citizen. She has resided in the United States for less than two years since age 14 and has resided in the United States for less than five years in total. Her parents were also born in the United States and are U.S. citizens. Her mother has resided in the United States for more than five years in total and, since reaching the age of 14, has resided in the United States for more than two years in total. Petitioner Fried was born in Israel in 1968 and is not a citizen of the United States, nor has he ever resided in the United States.

Petitioners have six children—by initials, C.B.F., R.F., S.F., E.A.F., Y.F., and N.F. (collectively, children)—all of whom were born in Israel. During the years in issue, petitioners and the children resided in Israel. The children have never resided in the United States. The oldest of the children, C.B.F., was born in 1993. In June 2007, the Director of the United States Citizen and Immigration Services, Department of Homeland Security (Director), granted certificates of citizenship to four of the children, R.F., E.A.F., Y.F., and N.F., who were then in the United States and who

---

[1] Secs. 21, 24, 151, and 152, sections important to this case, were different as applicable to 2004 and as applicable to 2005 through 2008. The differences are not important to resolution of the issues here presented, and we shall refer only to the provisions of those sections applicable to the latter years.

[2] The burden of proof plays little role in our analysis. Nevertheless, petitioners have not raised the issue of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations. We conclude that sec. 7491(a) does not apply because petitioners have not produced any evidence that they have satisfied the preconditions for its application. *See* sec. 7491(a)(2).

applied for, and were issued, Social Security cards. In April 2008, the Director granted certificates of citizenship to the remaining two children, C.B.F. and S.F., who were then in the United States and who applied for, and were issued, Social Security cards.

*Petitioners' Joint Federal Income Tax Returns*

In December 2007, petitioners filed three Forms 1040A, U.S. Individual Income Tax Return, one each for 2004, 2005, and 2006, showing on each their filing status to be "married filing jointly". On each, they claimed dependency exemption deductions—three for 2004 (for R.F., E.A.F., and Y.F.) and four for 2005 and 2006 (adding N.F.)—a child care credit and an additional child tax credit. They also claimed a child tax credit for 2005.[3] On each return, they reported an overpayment of tax and claimed a refund.

*Petitioner Carlebach's Federal Income Tax Returns*

In October 2008, petitioner Carlebach filed a Form 1040A for 2007, showing her filing status to be "single". On that return, she claimed six dependency exemption deductions and an additional child tax credit of $2,555. She also reported an overpayment of tax and claimed a refund.

In June 2009, petitioner Carlebach filed a Form 1040A for 2008, showing her filing status to be "married filing separately". On that return, she claimed six dependency exemption deductions, a child care credit, an additional child tax credit, and a recovery rebate credit. She also reported an overpayment of tax and claimed a refund.

*Refunds*

In January 2008, the Internal Revenue Service (IRS) made refunds to petitioners for 2004, 2005, and 2006. In March 2009, the IRS made a refund to petitioner Carlebach for 2007. Because of this litigation, the IRS has made no refund to her for 2008.

---

[3] The stipulation of facts erroneously states that the child tax credit was claimed for 2006; it is contradicted by the 2005 and 2006 Forms 1040A.

*Notices*

In each notice, respondent disallowed the claimed dependency exemption deductions and credits described above on the basis that none of the children met the definition of "qualifying child" under section 152. Respondent also determined section 6651(a)(1) additions to tax and section 6662(a) penalties with respect to petitioners for 2004–06 and with respect to petitioner Carlebach for 2007 and 2008 (since conceding the addition to tax and penalty for 2008).

OPINION

I. *Dependency Exemption Deductions*

A. *Applicable Law*

Section 151(a) and (c) allows a taxpayer an exemption deduction for each "dependent" as defined in section 152. "The term 'dependent' does not include an individual who is not a citizen or national of the United States unless such individual is a resident of the United States or a country contiguous to the United States." Sec. 152(b)(3)(A) (citizenship test). In pertinent part, section 1.152–2(a)(1), Income Tax Regs., provides: "to qualify as a dependent an individual must be a citizen or resident of the United States * * * at some time during the calendar year in which the taxable year of the taxpayer begins." The parties dispute only when the citizenship test must be satisfied in order that petitioners may claim the children as dependents.

B. *Respondent's Position*

Respondent argues that petitioners are not entitled to the dependency exemption deductions claimed for 2004–07, because some or all of the children were not U.S. citizens in the tax (calendar) years for which they were claimed as dependents. More specifically, he asserts that none of the children met the citizenship test for 2004, 2005, or 2006, and only four of the six met the citizenship test for 2007, because the children did not become citizens until they received their certificates of citizenship. He contends that, without the children's having satisfied the citizenship test, petitioners are not entitled to the dependency exemption deductions, nor are

they allowed the child-related credits, which require that the children satisfy the same statutory test.

C. *Petitioners' Position* [4]

Petitioners argue that they are entitled to the dependency exemption deductions for 2004–07 because the children were citizens at the time petitioners filed tax returns for those years. They claim that section 1.152–2(a)(1), Income Tax Regs., which requires that an individual be a citizen at some time during the calendar year in which begins the taxable year of the taxpayer claiming the individual as a dependent, is invalid. Employing the analysis set out in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (*Chevron*), petitioners claim that section 152(b)(3)(A) is unambiguous and that Congress specifically addressed the temporal requirement of citizenship by declining to require that an individual be a citizen "*at some time during the calendar year in which the taxable year of the taxpayer begins in order to be a dependent*."

Alternatively, petitioners argue that the children satisfied the citizenship test for 2004–07 because each child "had derivative citizenship 'at some time' during the tax years in which he or she was claimed as a dependent." Thus, petitioners assert that the children "satisfied the citizenship test for each of the tax years in question except for the formality of traveling to the United States to receive their certificates of citizenship." We address their last argument first.

D. *Discussion*

1. *Derivative Citizenship Claim*

There are "two sources of citizenship, and two only: birth and naturalization." *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898). [5] Under the Fourteenth Amendment to the Constitution, "[e]very person born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization." *Id.* Individuals born outside the United States may "only become

---

[4] Unless otherwise noted, we use the term "petitioners" collectively to refer to both petitioners to the notice issued to both of them (for 2004–06) and to petitioner Carlebach, the sole petitioner to the notice issued to her alone (for 2007 and 2008).

[5] The Immigration and Nationality Act elaborates the rules for at-birth citizenship, 8 U.S.C. secs. 1401–1409 (2012), and naturalization, *id.* secs. 1421–1458.

a citizen by being naturalized, either by treaty * * * or by authority of Congress". *Id.* at 702–703. Congress' authority to "establish a uniform Rule of Naturalization" is found under Article I, Section 8, Clause 4 of the Constitution.

U.S. citizenship obtained by virtue of the status of one's parent or grandparent as a U.S. citizen is sometimes referred to as derivative citizenship. *See, e.g.*, *Guzman v. U.S. Dept. of Homeland Sec.*, 679 F.3d 425, 430 (6th Cir. 2012) ("The Child Citizenship Act[6] allows a child to achieve derivative citizenship where only one parent is a U.S. citizen[.]" (internal quotation marks omitted)).

A child of a U.S. citizen (1) born outside the United States and (2) residing permanently in the United States becomes a citizen automatically when certain additional conditions are fulfilled. 8 U.S.C. sec. 1431 (2012). Children who regularly reside outside the United States may qualify for naturalization under 8 U.S.C. sec. 1433 (2012).[7] In pertinent part, 8 U.S.C. sec. 1433 provides:

SEC. 1433.   CHILDREN BORN AND RESIDING OUTSIDE THE
             UNITED STATES; CONDITIONS FOR ACQUIRING
             CERTIFICATE OF CITIZENSHIP.

(a) Application by citizen parents; requirements.

A parent who is a citizen of the United States (or, if the citizen parent has died during the preceding 5 years, a citizen grandparent or citizen legal guardian) may apply for naturalization on behalf of a child born outside of the United States who has not acquired citizenship automatically under section 1431 of this title. The Attorney General shall issue a certificate of citizenship to such applicant upon proof, to the satisfaction of the Attorney General, that the following conditions have been fulfilled:

(1) At least one parent (or, at the time of his or her death, was) is[1] a citizen of the United States, whether by birth or naturalization.

(2) The United States citizen parent—

(A) has (or, at the time of his or her death, had) been physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years; or

(B) has (or, at the time of his or her death, had) a citizen parent who has been physically present in the United States or its outlying posses-

---

[6] The Child Citizenship Act of 2000 (CCA), Pub. L. No. 106–395, secs. 101 and 102, 114 Stat. at 1631, amended secs. 320 and 322 of the Immigration and Nationalization Act (8 U.S.C. secs. 1431 and 1433), governing the acquisition of citizenship by certain children born outside the United States. *See* H.R. Rept. No. 106–852, at 3 (2000), 2000 U.S.C.C.A.N. 1499, 1502.

[7] Since the children, although born outside the United States, have not resided permanently in the United States, we are concerned only with the provisions of 8 U.S.C. sec. 1433 and not with the provisions of 8 U.S.C. sec. 1431.

sions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years.

(3) The child is under the age of eighteen years.

(4) The child is residing outside of the United States in the legal and physical custody of the applicant (or, if the citizen parent is deceased, an individual who does not object to the application).

(5) The child is temporarily present in the United States pursuant to a lawful admission, and is maintaining such lawful status.

(b) Attainment of citizenship status; receipt of certificate.

Upon approval of the application (which may be filed from abroad) and, except as provided in the last sentence of section 1448(a) of this title, upon taking and subscribing before an officer of the Service within the United States to the oath of allegiance required by this chapter of an applicant for naturalization, the child shall become a citizen of the United States and shall be furnished by the Attorney General with a certificate of citizenship.

[1]So in the original.

As is apparent from the statute, citizenship acquired pursuant to 8 U.S.C. sec. 1433 is not acquired automatically, but pursuant to application. *See* H.R. Rept. No. 106–852, at 5 (2000), 2000 U.S.C.C.A.N. 1499, 1502 ("The bill [which became the CCA] further provides that foreign-born children of U.S. parents who are temporarily present in the United States but intend to reside abroad will continue to be eligible to apply for citizenship as they do under current law."). An application for citizenship made under 8 U.S.C. sec. 1433 must be approved by the Attorney General, and the applicant must appear in the United States and, unless the requirement is waived (e.g., because of the age of the child), take an oath of allegiance before the certificate of citizenship may be conferred. 8 U.S.C. secs. 1433(b), 1448. Despite petitioner Carlebach's having pursuant to 8 U.S.C. sec. 1433(a) made application on behalf of her children for naturalization, and the children's having fulfilled all of the conditions set forth in 8 U.S.C. sec. 1433(a)(1) through (5), the children could not receive their certificates of citizenship until they personally appeared before the Attorney General (or his duly appointed representative) in the United States in 2007 and 2008. Other courts have recognized that the conferral of a certificate of citizenship is "ministerial rather than discretionary." *Harriott v. Ashcroft*, 277 F. Supp. 2d 538, 543 (E.D. Pa. 2003). However, no matter how insignificant the appearance and subsequent oath may seem, those elements are man-

dated by Congress, which, except in cases governed by treaty, has the sole authority to govern the process by which those born abroad may become naturalized citizens. *See Wong Kim Ark*, 169 U.S. at 702–703. Finally, as illustrated by the children's certificates, which are in evidence, the actual certificate itself recognizes that citizenship is conferred only at the time the certificate is bestowed. Thus, while the children may have derived their citizenship from the status of their mother and grandparents as citizens, they did not become citizens until they were in the United States in 2007 and 2008 and fulfilled all of the conditions of 8 U.S.C. sec. 1433.

2. *Chevron Analysis*

Petitioners principally argue that section 1.152–2(a)(1), Income Tax Regs., is invalid. They contend that section 152(b)(3)(A) simply provides that a dependent "does not include an individual who is not a citizen or national of the United States" and that it includes no requirement that a child be a citizen at some time during the calendar year in which begins the taxable year of the taxpayer claiming the individual as a dependent. They argue, therefore, that, because the children were citizens at the time petitioners filed their returns, they are entitled to the claimed dependency exemption deductions, and that any additional requirement imposed by the regulations is invalid. [8]

Last year, the U.S. Supreme Court confirmed that courts apply *Chevron* deference to Treasury regulations. *See Mayo Found. for Med. Educ. and Research v. United States*, 562 U.S. ____, ____, 131 S. Ct. 704, 711–713 (2011). Determining whether a Treasury regulation merits *Chevron* deference often involves a two-step process: We first determine whether Congress has directly spoken to the precise question at issue. *Chevron*, 467 U.S. at 842. If the answer is yes, we must give effect to congressional intent. *Id.* at 842–843. We make the determination as to whether Congress has directly spoken "employing traditional tools of statutory construction". *United States v. Home Concrete & Supply, LLC*, 566 U.S.

---

[8] While petitioners appear to restrict themselves to arguing that the children can be claimed as dependents if they are citizens at the time petitioners filed their returns, their logic (based on the absence of a time constraint on citizenship in sec. 152(b)(3)(A)) is not so restricted, and it would seem to allow the retroactive qualification of a dependent (as a citizen) at any time within the period of limitations (to file an amended return).

____, ____, 132 S. Ct. 1836, 1844 (2012) (citing *Chevron*, 467 U.S. at 843 n.9). If, employing those tools, we determine that Congress has not directly spoken to the precise question at issue, we proceed to the second *Chevron* step, to determine whether the agency's chosen interpretation is a "reasonable interpretation" of the enacted statutory text. *Chevron*, 467 U.S. at 843–844. If it is a reasonable interpretation, the regulation will stand. It will be ruled invalid only if it is found to be "'arbitrary or capricious in substance, or manifestly contrary to the statute.'" *Mayo Found.*, 562 U.S. at ____, 131 S. Ct. at 711 (quoting *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 242 (2004)).

Petitioners claim that section 152(b)(3)(A) unambiguously does not require that an individual be a citizen at some time during the calendar year in which begins the taxable year of the taxpayer claiming the individual as a dependent. They cite as dispositive the omission from section 152(b)(3)(A) of that requirement by pointing out that Congress expressly required that many other elements of section 152 be fulfilled within the taxable year (e.g., the principal place of abode, age, and support tests) but did not similarly extend that requirement to the citizenship test. In support of their contention, petitioners cite *Russello v. United States*, 464 U.S. 16, 23 (1983), in which the U.S. Supreme Court stated: "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Therefore, they claim that section 1.152–2(a)(1), Income Tax Regs., which imposes that similar temporal requirement on section 152(b)(3)(A), is an invalid agency interpretation of the statute.

Arguably, section 152(b)(3)(A) is, as petitioners claim, unambiguous. In our view, however, the statute can only be read as being consistent with, not contrary to, section 1.152–2(a)(1), Income Tax Regs. Petitioners' argument is based on context (the omission of a temporal requirement with respect to citizenship is significant because Congress included the requirement in other elements of section 152). Indeed, context is critical. In determining statutory meaning, the U.S. Supreme Court has cautioned against confining the examination to the particular language in isolation. *FDA v. Brown &*

*Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). It explained: "The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* It added: "'It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Id.* at 133 (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989)). Applying a contextual analysis, we think it plain that Congress did not intend section 152(b)(3)(A) to be read in a manner inconsistent with section 1.152–2(a)(1), Income Tax Regs.

We must interpret section 152(b)(3)(A) in the context of subtitle A of the Internal Revenue Code, which deals with income taxes, and in which the concept of an annual accounting system is deeply embedded. *See* secs. 441(a), 451(a), 461(a). [9] The U.S. Supreme Court has emphasized the role of an annual accounting system in Federal income tax:

Congress has enacted an annual accounting system under which income is counted up at the end of each year. It would be disruptive of an orderly collection of the revenue to rule that the accounting must be done over again to reflect events occurring after the year for which the accounting is made, and would violate the spirit of the annual accounting system. This basic principle cannot be changed simply because it is of advantage to a taxpayer or to the Government in a particular case that a different rule be followed. [*Healy v. Commissioner*, 345 U.S. 278, 284–285 (1953).]

In the narrower context of section 152 and its immediate environs (part V, subchapter B, chapter 1, subtitle A of the Internal Revenue Code), the allowance as deductions of additional exemptions for dependents (including qualified children) is cast in terms of an additional exemption "for each individual who is a dependent * * * of the taxpayer *for the taxable year*." Sec. 151(c) (emphasis added). Likewise, the qualification "taxable year" appears over 30 times in section 152 (2008), and it is anomalous to think that the determination of whether a qualifying child or relative is, on account of the citizenship test, a dependent of a taxpayer for a taxable year of that individual could be unknown for, at least

---

[9] *See also* sec. 11 (imposing a tax "for each taxable year on the taxable income of every corporation"); sec. 162 (allowing "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business").

in theory, an indefinite period. [10] Generally, a Federal income tax return reflects the events that affect income during the taxable year for which it is filed. [11] Four of petitioners' children were naturalized and became U.S. citizens in 2007, and yet petitioners claimed them as dependents on their 2004 through 2006 income tax returns, despite the fact that those children had not yet become citizens. The other two children became citizens in 2008 and yet were claimed as dependents in 2007. Allowing petitioners dependency exemption deductions with accompanying credits for children failing to meet the citizenship test—as construed in section 1.152–2(a)(1), Income Tax Regs.—would be violative of Congress' expressed preference in the income tax provisions of the Internal Revenue Code for a system of annual accounting.

Even if we concede that section 152(b)(3)(A) is ambiguous regarding the time at which the alleged dependent must achieve citizenship, we reach the same result under *Chevron* step 2. In the light of the Federal income tax law's embodiment of a system of annual accounting, it is beyond dispute that section 1.152–2(a)(1), Income Tax Regs., is reasonable and "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. And while " 'neither antiquity nor contemporaneity with [a] statute is a condition of [a regulation's] validity' ", *Mayo Found.*, 562 U.S. at ___, 131 S. Ct. at 712 (quoting *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740 (1996)), "To be sure, agency interpretations that are of long standing come before us with a certain credential of reasonableness, since it is rare that error would long persist", *Smiley*, 517 U.S. at 740. Section 1.152–2(a)(1), Income Tax Regs., gains legitimacy from the fact that the temporal requirement contained therein is longstanding, having been in the regulations since 1944. *See* sec. 29.25–3(b), Regs. 111 (1944). In 1949, following notice and comment procedures, the Secretary amended section 29.25–3, Regs. 111, to restate much of the language from the 1944 regulations, including the temporal requirement contained therein.

---

[10] *See supra* note 8.

[11] *See also Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 363–366 (1931) (confirming that the income tax acts enacted by Congress imposed annual, rather than transactional, accounting for income). When the strict application of the annual accounting system results in what may be perceived as an inequitable result, Congress can act to remedy any inequity, as evidenced by the net operating loss carryback and carryover rules found in sec. 172 and the capital loss carryback and carryover rules found in sec. 1212.

Income Tax; Taxable Years Beginning After Dec. 31, 1947, 13 Fed. Reg. 6289 (proposed Oct. 27, 1948); T.D. 5687, 1949–1 C.B. 9, 21.

We hold that section 1.152–2(a)(1), Income Tax Regs., is valid.

### 3. *Conclusion*

We find that, for failure to satisfy the citizenship test, none of the children qualified as petitioners' dependents for 2004–06, and two of the six children did not qualify as petitioner Carlebach's dependents for 2007. The remaining four children qualified as petitioner Carlebach's dependents for 2007. Therefore, petitioners are entitled to no dependency exemption deductions for 2004–06, and petitioner Carlebach is entitled to four dependency exemption deductions for 2007. [12]

### II. *Child Care Credit, Child Tax Credit, and Additional Child Tax Credit*

In order for a taxpayer to claim a section 21 credit for expenses for household and dependent care services necessary for gainful employment (child care credit), a taxpayer must incur employment-related expenses on behalf of, as pertinent to this case, a dependent of the taxpayer as defined in section 152(a)(1). [13] Sec. 21(b)(1)(A). Additionally, married taxpayers must file a joint return. Sec. 21(e)(2).

In order to claim the child tax credit and additional child tax credits, section 24, in relevant part, requires that a child be a "qualifying child", applying a modified version of the citizenship test. *See* sec. 24(a), (c).

Because we have determined that the children only met the citizenship test for the year in which they received their certificates of citizenship (2007 for R.F., E.A.F., Y.F., and N.F., and 2008 for C.B.F. and S.F.), we sustain respondent's disallowance of those credits relating to R.F., E.A.F., Y.F., and N.F. for 2004, 2005, and 2006 and the disallowance of those credits relating to C.B.F. and S.F. for 2007.

---

[12] We today decide another citizenship test case consistently. *Stern v. Commissioner*, T.C. Memo. 2012–204.

[13] Petitioners apparently concede that, in determining whether the children were qualifying children and, thus, dependents under sec. 152(a)(1), we take into account the citizenship test in sec. 152(b)(3)(A).

For 2008, respondent concedes that each child satisfied the citizenship test but argues that petitioner Carlebach is not entitled to the child care credit because, although married at the time, she did not file a joint return. *See* sec. 21(e). Petitioner Carlebach claims that she is so entitled. She argues that, in contravention of section 7522, which requires that a notice of deficiency "describe the basis for, and identify the amounts (if any) of, the tax due, interest" and other items included in the notice, respondent changed the basis for the disallowance of the 2008 child care credit from a section 152 violation in the second notice to a section 21(e) violation in his posttrial brief. She further argues that respondent's reliance on section 21(e) as an alternative basis for the disallowance is forbidden as "late-in-the-day maneuvering."

While the first sentence of section 7522(a) does indeed require that a notice of deficiency give notice as described by petitioner Carlebach, the second sentence of that section adds: "An inadequate description under the preceding sentence shall not invalidate such notice." Moreover, we have held that section 7522(a) does not require the Commissioner to identify the specific statutory provision supporting each adjustment in the notice of deficiency, nor is he required to lay out the factual basis for his determination in that notice. *E.g.*, *Cadwell v. Commissioner*, 136 T.C. 38, 49 (2011), *aff'd*, 483 Fed. Appx. 847 (4th Cir. 2012).

In pertinent part, Rule 142(a)(1) provides that, in respect to any new matter pleaded in the answer, the burden of proof shall be on respondent. Even if we were to consider respondent's argument a new matter (which we do not), the burden of proof would not be determinative, since petitioner Carlebach's 2008 Form 1040A, showing her filing status as married filing separately, is stipulated.

At worst, respondent has a new theory, and "A 'new theory' is just a new argument about the existing evidence and is thus allowed." *Hurst v. Commissioner*, 124 T.C. 16, 29 (2005). Although respondent's new theory was first advanced on brief, petitioner Carlebach has had (and indeed took advantage of) the opportunity to address it in her answering brief. We see no disadvantage to petitioners requiring any remedy.

Because petitioner Carlebach did not file a joint return with her husband for 2008, she is not entitled to a child care

credit for that year. *See* sec. 21(e)(2). Accordingly, we sustain respondent's disallowance of that credit for 2008.

III. *Additions to Tax and Penalties*

A. *Accuracy-Related Penalties*

1. *Applicable Law*

Section 6662(a) and (b) provides for the imposition of an accuracy-related penalty equal to 20% of any portion of an underpayment attributable to, among other things, negligence or disregard of rules or regulations (without distinction, negligence), or any substantial understatement of income tax.

In general, an understatement is the excess of the amount of the tax required to be shown on the return for the taxable year over the amount of the tax imposed that is shown on the return reduced by any rebate. Sec. 6662(d)(2)(A). For an individual, such an understatement is "substantial" when it exceeds the greater of (1) 10% of the tax required to be shown or (2) $5,000. Sec. 6662(d)(1)(A). "The term 'negligence' includes any failure to make a reasonable attempt to comply with the provisions of * * * [the Internal Revenue Code], and the term 'disregard' includes any careless, reckless, or intentional disregard." Sec. 6662(c). Negligence has been generally defined as lack of due care or failure to do what a reasonably prudent person would do under like circumstances. *See, e.g.*, *Hofstetter v. Commissioner*, 98 T.C. 695, 704 (1992).

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for that portion and the taxpayer acted in good faith with respect to that portion.

The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of * * * law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer. * * * [Sec. 1.6664–4(b)(1), Income Tax Regs.]

Respondent determined that petitioners are liable for accuracy-related penalties on the basis of negligence for 2004 and on the basis of negligence and substantial understatement for 2005 and 2006. He also determined that petitioner Carlebach is liable for accuracy-related penalties on the basis of negligence for 2007 and 2008 but subsequently conceded the penalty for 2008.

Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set out in section 6662(b). Sec. 1.6662–2(c), Income Tax Regs.

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties, additions to tax, or additional amounts and must come forward with sufficient evidence indicating that it is proper to impose the penalty or addition. *Kaufman v. Commissioner*, 136 T.C. 294, 323 (2011). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties or additions are inappropriate because of reasonable cause. *Id.*

2. *Analysis*

a. *Evidence of Negligence*

Respondent has met his burden with respect to the ground of negligence for 2004–07 by establishing that petitioners, in claiming exemption deductions and credits for children who did not meet the citizenship test, were negligent and disregarded the applicable regulation. Accordingly, petitioners are liable for the section 6662(a) penalty on the ground of negligence for tax years 2004–07 unless they meet the section 6664(c) exception for reasonable cause and good faith. Because of section 1.6662–2(c), Income Tax Regs., we need not address the applicability of the penalty based upon the ground of substantial understatement of income tax for 2005 and 2006.

b. *Reasonable Cause and Good Faith Defense*

Petitioners failed to prove that they acted with reasonable cause and good faith in claiming the deductions and credits at issue herein. They claim that they "were acting in good

faith. * * * [They] had no familiarity with United States Income Tax and acted in accordance with what they believed the law to be." However, petitioners claimed deductions in violation of a valid regulation. Petitioners have offered no evidence to demonstrate reasonable cause for their position. Their argument regarding the invalidity of the regulation did not surface until litigation commenced, and they presented no evidence of reliance on a tax professional for the decision to claim those dependency exemption deductions and accompanying credits. A taxpayer's ignorance of the law is no excuse for failure to comply with it. *E.g.*, *McGehee Family Clinic, P.A. v. Commissioner*, T.C. Memo. 2010–202; *see also United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971) ("The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation."); *Barlow v. United States*, 32 U.S. 404, 411 (1833) (ignorance of the law is no excuse in either civil or criminal cases).

### 3. *Conclusion*

We find no credible evidence that petitioners acted in good faith in claiming dependency exemption deductions and accompanying credits for children who had yet to meet the citizenship test. We therefore (1) find petitioners liable for accuracy-related penalties for 2004–06 and (2) find petitioner Carlebach liable for an accuracy-related penalty for 2007. Subject to adjustments to reflect certain concessions, respondent's determinations of penalties under section 6662(a) are sustained.

### B. *Additions to Tax*

### 1. *Applicable Law*

Section 6651(a)(1) provides that, in the case of a failure to file an income tax return by the due date, there shall be imposed an addition to tax for such failure of 5% of the amount of tax required to be shown on the return, reduced by timely payments and credits under section 6651(b)(1), for each month or portion thereof during which the failure continues, not exceeding 25% in the aggregate, unless such failure is due to reasonable cause and not due to willful neglect.

In the notices, respondent determined a section 6651(a)(1) addition to tax for 2004–07. The parties have stipulated that petitioners' 2004, 2005, and 2006 Forms 1040A were all filed in December 2007. They have also stipulated that petitioner Carlebach's 2007 Form 1040A was filed in October 2008.

### 2. *Analysis*

Petitioners were calendar year taxpayers during the years in issue. Accordingly, unless extensions of time to file had been granted, petitioners' 2004–07 returns were due on April 15 of the following year. *See* secs. 6072(a), 6081(a). There is no evidence of any such extensions. Petitioners' 2004–07 returns were, therefore, late.

Petitioners claim that their returns were not filed late because they were "filed within the allowed time period for claiming a refund." We acknowledge that there is no penalty for late filing when a refund is due. However, as discussed *supra*, petitioners' children did not satisfy the citizenship test for 2004–06 and thus were not eligible to be claimed as dependents. Additionally, two of the children did not satisfy the citizenship test in 2007. As a result, petitioners had no valid claim for refund for those years. Their mistaken claims for refund do not establish reasonable cause and the absence of willful neglect. *See Calloway v. Commissioner*, 135 T.C. 26, 45 (2010) ("Petitioners' explanation [that, if deficiency had not been sustained, they would have been entitled to a refund] establishes neither reasonable cause nor the absence of willful neglect.").

### 3. *Conclusion*

Petitioners failed to timely file their 2004–07 Forms 1040A, and they have not shown that those failures were due to reasonable cause and lack of willful neglect. Respondent's determinations of additions to tax under section 6651(a)(1) are sustained.

IV. *Conclusion*

*Decision will be entered under Rule 155.*