YITZCHOK D. RAND AND SHULAMIS KLUGMAN, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2633–11.        Filed November 18, 2013.

Ps filed a joint income tax return for 2008 improperly
claiming three refundable credits: an earned income credit, an
additional child tax credit, and a recovery rebate credit. As a
result, they claimed a tax refund of $7,327. The parties agree
that the correct tax liability was $144. The parties also agree
that an accuracy-related penalty applies, but they dispute
how the penalty should be calculated, specifically what should
be used as the amount shown as the tax on the return. This
number affects the amount of the underpayment that serves
as the base upon which an accuracy-related penalty is com-
puted. *Held*: When determining the amount shown as tax on
the return under I.R.C. sec. 6664(a)(1)(A), the earned income
credit, additional child tax credit, and recovery rebate credit
are taken into account but do not reduce the amount shown
as tax below zero.

*Andrew R. Roberson*, *Roger J. Jones*, and *Patty C. Liu*, for
petitioners. *

*Michael T. Shelton* and *Lauren N. Hood*, for respondent.

---

 *An amicus curiae brief was filed by *Carlton M. Smith* as attorney for
the Cardozo Tax Clinic.

376

OPINION

BUCH, *Judge*: Respondent determined deficiencies, additions to tax, and penalties with respect to petitioners' joint Federal income tax as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 2006 | $3,540 | $100 | $708.00 |
| 2007 | 3,901 | 100 | 780.20 |
| 2008 | 8,127 | -0- | 1,625.40 |

Because the parties have resolved all other issues by stipulation, the only issue for the Court to decide is the amount of the penalty under section 6662(a)[1] for 2008. Determining that amount requires us to first determine the "underpayment of tax required to be shown" on petitioners' 2008 tax return. *See* sec. 6662(a) (imposing 20% penalty on specified portions of "an underpayment of tax required to be shown on a return"); sec. 6664(a) (defining "underpayment"). This, in turn, requires that we determine "the amount shown as the tax" on petitioners' 2008 return. *See* sec. 6664(a)(1)(A).

Respondent argues that the amount shown as tax on the return is reduced by the refundable credits claimed on the return. Under this approach, the amount shown as tax on the return is –$7,327. Petitioners argue that the amount shown as tax on the return is calculated without regard to refundable credits. Under this approach, the amount shown as tax on the return would be $144. The Cardozo Tax Clinic argues in its amicus brief (and petitioners argue in the alternative) that the amount shown as tax on the return is reduced by the refundable credits but not below zero. Under this approach, the amount shown as tax on the return would be zero. This last result is correct, because it is the only approach supported by principles of statutory construction.

### Background

Petitioners Rand and Klugman, who were a married couple during 2008, timely filed a 2008 joint Federal income tax

[1] Unless otherwise noted, all references to sections are to the Internal Revenue Code of 1986, as in effect for the 2008 tax year. All Rule references are to the Tax Court Rules of Practice and Procedure.

return on Form 1040, U.S. Individual Income Tax Return. On line 7 of their Form 1040 they reported "Wages, salaries, tips, etc." of $17,200. They attached to the Form 1040 a Form 4852, Substitute for Form W–2,[2] that Rand signed and that stated that he had earned $17,200 in "Wages, tips, and other compensation". Petitioners reported business income of $1,020 from Rand's work as a tutor. Lastly, they deducted $72 for one-half of the self-employment tax liability imposed by section 1401. In total petitioners reported that their adjusted gross income was $18,148.

This income was reduced to zero by various deductions. Petitioners claimed a standard deduction of $10,900 and a deduction of $14,000 resulting from four personal exemptions. The result on line 43, where taxable income is reported, was zero, which in turn resulted in a tax liability on line 44 also of zero.

The 2008 Form 1040 has several lines that set forth amounts of tax. Starting with a tax of zero on line 44, petitioners reported $144 of self-employment tax on line 57. This resulted in a "total tax" on line 61 of $144.

*Credits and Refund*

The total tax of $144 was reduced, below zero, by refundable tax credits. Petitioners claimed an earned income credit of $4,824, an additional child tax credit of $1,447, and a recovery rebate credit of $1,200. They reported that they had two qualifying children for the purpose of calculating the earned income credit and the additional child tax credit, and they further reported that each child lived with them in the United States during all 12 months of 2008.

To determine qualification, both the earned income tax credit and the additional child tax credit take into account the amount of earned income, and petitioners reported earned income of $18,148 on Schedule 8812, Child Tax Credit. This amount represents $17,200 of wages and $1,020 of self-employment earnings, reduced by $72 for one-half of self-employment taxes. After taking into account the refundable credits, petitioners claimed an overpayment of $7,327 on

---

[2] The complete name of Form 4852 is Substitute for Form W–2, Wage and Tax Statement, or Form 1099–R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.

line 72 of their return, and on line 73, they requested that the full amount be refunded to them.

On May 4, 2009, the Internal Revenue Service (IRS) refunded the $7,327.

*Agreed Adjustments*

The IRS sent a notice of deficiency to petitioners on December 10, 2010. The notice sets forth adjustments to tax and penalties for tax years 2006, 2007, and 2008, but only the penalty for 2008 remains at issue. The parties have resolved all issues for 2006 and 2007 by stipulation.

For 2008 the notice of deficiency contains several adjustments, nearly all of which the parties have resolved by stipulation.[3] As is relevant to the dispute before us, the notice of deficiency determined that petitioners were not entitled to the earned income tax credit or the child tax credit; petitioners agreed. Also, the notice of deficiency determined that an accuracy-related penalty under section 6662 applies; the parties agree that a penalty applies "if the Court determines that there is 'an underpayment of tax required to be shown on the return' within the meaning of I.R.C. § 6662(a)".

In addition to the adjustments set forth in the notice of deficiency, respondent filed an amendment to his answer in which he asserted that petitioners were not entitled to the

---

[3] Even after the parties' stipulations, one issue remains unresolved (in addition to the penalty issue addressed in this Opinion). By stipulation, the parties agree that petitioners did not have sufficient earned income to qualify for the additional child tax credit or the recovery rebate credit. The earned income thresholds for claiming the additional child tax credit and the recovery rebate credit are $8,500 and $3,000, respectively. *See* sec. 24(d)(1)(B)(i) (additional child tax credit); sec. 6428(b)(2)(A) (recovery rebate credit). Respondent assumes that this stipulation eliminated the income reported on line 7, apparently predicated on the incorrect notion that all items reported on line 7 are earned income. Petitioners make no such assumption; they assume that the $17,200 remains on line 7.

We need not resolve the parties' confusion regarding their own stipulation. It is possible to have line 7 income that is not earned income, such as scholarship income that is not reported on a Form W–2. *See* IRS Publ. 596, at 22 (2008). The two possible interpretations of their stipulation are (1) petitioners had $17,200 of line 7 unearned income, or (2) they had no line 7 income. Under either scenario, petitioners' taxable income is zero, because their income would be fully offset by the standard deduction coupled with dependency exemptions.

recovery rebate credit (along with a corresponding increase in the penalty under section 6662). Petitioners agreed to this adjustment.

Thus, after concessions, the sole issue remaining to be decided is whether there is an "underpayment" upon which an accuracy-related penalty can be computed.

*Positions of the Parties*

The parties submitted the case without trial pursuant to Rule 122. Petitioners have conceded that they are liable for the accuracy-related penalty for 2008 if there is "an underpayment of tax required to be shown on a return" as that phrase is used in section 6662(a). It follows from the concession that petitioners have waived any defense based on reasonable cause. *See* sec. 6664(c). For the purposes of part II of subchapter A of chapter 68 of the Code, which includes section 6662, the term "underpayment" is defined by section 6664(a). It consists of four components:

(1) the "tax imposed"
(2) "the amount shown as the tax by the taxpayer on his return"
(3) "amounts not so shown previously assessed (or collected without assessment)", and
(4) "the amount of rebates made".

In their briefs the parties agree that the first component is $144, the third component is zero, and the fourth component is zero. Their dispute is about the second component: the amount shown as the tax by the taxpayer on the return.

The IRS contends that the statutory phrase "the amount shown as the tax" is ambiguous as to whether the amount includes the three refundable credits petitioners claimed on their 2008 return. The IRS contends that the Court should consult the definition of this phrase in section 1.6664–2(c), Income Tax Regs., and that this regulation should be interpreted to require that petitioners' claims for the three credits be included in the computation of the amount shown as tax on their return. The IRS contends that its interpretation of the regulation should be afforded deference under the principle that an agency's interpretation of its own ambiguous

regulation must be afforded deference. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).

Petitioners contend that the Code unambiguously excludes any credits claimed on a return from the computation of the amount of tax shown on the return. According to petitioners, the provisions in the Code allowing tax credits clearly distinguish between credits and the taxes against which credits are applied. For example, section 24(a) provides a "credit against the tax imposed by this chapter". To petitioners, this means that the additional child tax credit they claimed is not part of the tax shown on their return.

Petitioners also observe that in defining the amount of tax shown on the return for calculating a deficiency, section 6211(b)(4) provides that the difference between (1) the refundable credits[4] claimed on the return and (2) the amount shown as tax on the return (as determined without regard to refundable credits) is taken into account as a negative amount of tax. Because Congress did not enact a similar provision for the calculation of an underpayment, petitioners contend that Congress must have intended that refundable credits be excluded from the tax shown on the return in underpayment calculations.

Petitioners make the following alternative argument: "Even if the refundable credits at issue were to be included in the calculation of the amount of tax shown by Petitioners on their return, there is no statutory or regulatory basis for reducing the amount of tax below zero. Thus, any underpayment would be limited to the amount of the credit against Petitioners' reported self-employment tax." This position was also presented by the Cardozo Tax Clinic.

The Cardozo Tax Clinic filed an amicus brief contending that the three types of credits petitioners claimed are part of the amount shown as tax on the return when calculating an underpayment. However, the Clinic contends that the tax shown on a return cannot be negative when calculating an

---

[4] Section 6402(a) provides that the Secretary may credit the amount of an "overpayment" against the tax liability of the person making the overpayment and must refund any balance to the person. Section 6401(b) provides that if the amount of specified credits (including the three credits petitioners claimed on their 2008 return) exceed the tax imposed by subtitle A (as reduced by other nonrefundable credits), the amount of such excess is considered an overpayment.

underpayment because Congress purposefully declined to incorporate a provision like section 6211(b) in the definition of an underpayment. Thus, the Clinic disagrees with petitioners' primary argument that credits are excluded from the calculation of the tax shown on the return, but it agrees with petitioners' alternative argument.

### *Discussion*

The issue to be resolved is the amount of tax shown on the return (within the meaning of section 6664(a)(1)(A)) for a 2008 income tax return that reported:

- $0 of income tax under section 1,
- $144 of self-employment tax under section 1401,
- $1,447 of additional child tax credit,
- $4,824 of earned income credit, and
- $1,200 of recovery rebate credit, resulting in
- $7,327 of overpayment, claimed as a refund.

The positions taken are: (a) –$7,327, as the IRS argues, (b) $144, as petitioners argue, or (c) $0, as the Clinic argues (and as petitioners argue in the alternative). We hold that the amount is zero. The result of this conclusion is that, for penalty computation purposes, petitioners have an underpayment of $144.

### *Operative Provisions*

Section 6662(a) provides the rules for the application of an accuracy-related penalty, including a penalty that is predicated on negligence or a substantial understatement of income tax. Subsection (a) provides:

> SEC. 6662(a). IMPOSITION OF PENALTY.—If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies.

In turn, "underpayment" is defined by section 6664(a), which provides, in relevant part:

> SEC. 6664(a). UNDERPAYMENT.—For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—
>     (1) the sum of—

(A) the amount shown as the tax by the taxpayer on his return, plus

(B) amounts not so shown previously assessed (or collected without assessment), over

(2) the amount of rebates made.

This "part" of the Code includes sections 6662 through 6664.

*Feller v. Commissioner Inapposite*

In this case we are not called upon to address whether the statute is clear on its face as to whether "the amount shown as the tax by the taxpayer on his return" takes into account the earned income tax credit, the additional child tax credit, or the recovery rebate credit. In *Feller v. Commissioner*, 135 T.C. 497, 508 (2010), we previously held that "Section 6664 is silent and ambiguous with respect to the issue before us; i.e., Congress has not directly addressed the meaning of the term 'underpayment' when a taxpayer has overstated withholding credits." But in *Feller* the Court addressed the validity of a regulation that interpreted section 6664.

In *Feller* the Court addressed the question of how overstated withholding credits under section 31 fit within the definition of an underpayment under section 6664. As is pertinent here, the Court found the definition of an underpayment to be ambiguous, at least insofar as overstated withholding credits are concerned. This determination of ambiguity was necessary to the Court's analysis, because the Secretary had promulgated regulations specifically addressing the treatment of withholding credits. One such regulation, section 1.6664–2(c), Income Tax Regs., provides:

(c) Amount shown as the tax by the taxpayer on his return—(1) Defined.—For purposes of paragraph (a) of this section, the amount shown as the tax by the taxpayer on his return is the tax liability shown by the taxpayer on his return, determined without regard to the items listed in paragraphs (b)(1), (2), and (3) of this section, except that it is reduced by the excess of—

(i) The amounts shown by the taxpayer on his return as credits for tax withheld under section 31 (relating to tax withheld on wages) and section 33 (relating to tax withheld at source on nonresident aliens and foreign corporations), as payments of estimated tax, or as any other payments made by the taxpayer with respect to a taxable year before filing the return for such taxable year, over

(ii) The amounts actually withheld, actually paid as estimated tax, or actually paid with respect to a taxable year before the return is filed for such taxable year.

*See* sec. 1.6664–2(b)(1), (2), and (3), Income Tax Regs.; *see also* sec. 1.6664–2(g), *Example* (*3*), Income Tax Regs. The phrase "items listed in paragraphs (b)(1), (2), and (3) of this section" refers to amounts paid by or on behalf of the taxpayer, such as estimated taxes and withholding.

When testing the validity of a regulation, we generally look to the two-part test established under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The first prong of that test is "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If Congress has not spoken to the precise question at issue, then the Court must determine whether the regulation "is based on a permissible construction of the statute." *Id.* at 843. Thus, when testing the validity of section 1.6664–2(c), Income Tax Regs., in *Feller*, the Court was first required to determine whether section 6664 has "spoken to the precise question at issue." That question, as noted by the opinion of the Court in *Feller*, was "the meaning of the term 'underpayment' when a taxpayer has overstated withholding credits." *Feller v. Commissioner*, 135 T.C. at 508. In this case, we are not addressing withholding credits.

In contrast to withholding credits, the regulations under section 6664 fail to address either of the two questions that are relevant to the current dispute. First, they fail to address whether the earned income credit, additional child tax credit, and recovery rebate credit are taken into account when calculating the amount shown as the tax on the return. One could interpret this regulation as taking into account these credits only by relying on the canon *expressio unius est exclusio alterius*, discussed below—i.e., by specifically addressing withheld taxes and payments, one could infer that the Secretary intended that no adjustment be made for refundable tax credits. Even then, however, the regulations fail to address the second question: whether there can be a "negative tax".

Because the Secretary has not promulgated a regulation addressing how the refundable credits at issue here should be taken into account, we need not address whether the statute leaves room for agency interpretation. It follows that we are also not resolving the question of whether the Secretary may promulgate a regulation that is inconsistent with

this Opinion. [5] And the mere fact that we devote these pages to interpreting the statute does not, by implication, mean that the statute is ambiguous. Whether a statute is ambiguous is determined not only from the language of the statute being considered, but also from the "language and design of the statute as a whole." *See, e.g.*, *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Thus, in looking beyond the language of section 6664(a)(1)(A) as part of our analysis, we are not answering the question of whether the statute is ambiguous. We are simply interpreting the statute. And to do so, we turn to principles of statutory construction.

*Reading Section 6664(a)(1)(A) in the Light of Section 6211(a)(1)(A)*

Returning to the definition of an underpayment, we note that the Code provides the following:

SEC. 6664(a). UNDERPAYMENT.—For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—

(1) the sum of—

(A) the amount shown as the tax by the taxpayer on his return, plus

(B) amounts not so shown previously assessed (or collected without assessment), over

(2) the amount of rebates made.

A series of canons of statutory construction lead to the conclusion that refundable credits must be taken into account when determining the amount shown as the tax by the taxpayer but that those credits cannot reduce that amount below zero.

Where the same words or phrase appear within a text, they are presumed to have the same meaning. *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932) ("Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."); *see also TG Mo. Corp. v. Commissioner*, 133 T.C. 278, 296 (2009). The phrase "the amount

[5] If the Secretary should promulgate such a regulation, we may be called upon to revisit that question, but judicial restraint dictates that we not resolve that question now. *LTV Corp. v. Commissioner*, 64 T.C. 589, 595 (1975) ("[C]ourts will not gratuitously decide complex issues that cannot affect the disposition of the case before them.").

shown as the tax by the taxpayer" appears three times in the Code. Two of those passages are related: the definition of a deficiency under section 6211 and the definition of an underpayment under section 6664. [6]

Although not explicitly linked today, the definition of a deficiency under section 6211 and the definition of an underpayment under section 6664(a) are linked by history. As summarized in *Feller v. Commissioner*, 135 T.C. at 506, in 1989 several penalty provisions were consolidated into sections 6662 through 6665. Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101–239, sec. 7721(a), 103 Stat. at 2395, 2399. The term "underpayment", which had been defined in section 6653 before the 1989 amendments, was defined in section 6664(a) after the amendments. Before amendment, "underpayment" was defined with an explicit cross-reference to the definition of a deficiency. Specifically, section 6653 provided:

> SEC. 6653(c). DEFINITION OF UNDERPAYMENT.—For purposes of this section, the term "underpayment" means—
>
>   (1) INCOME, ESTATE, GIFT, AND CERTAIN EXCISE TAXES.—In the case of a tax to which section 6211 (relating to income, estate, gift, and certain excise taxes) is applicable, a deficiency as defined in that section * * *

Thus, at one time, the terms "underpayment" and "deficiency" were coextensive.

Although they are linked by history, the fact remains that in 1989 Congress uncoupled these terms. And although identical words are presumed to have the same meaning, the presumption "'is not rigid'". *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 213 (2001) (quoting *Atl. Cleaners & Dyers*, 286 U.S. at 433). But here, Congress expressly indicated that uncoupling these terms was not intended to remove their definitional nexus. Despite detaching the definition of an underpayment from the definition of a deficiency, Congress informed us that "the bill provides a standard definition of underpayment for all of the accuracy-related penalties. This standard definition is intended to simplify and coordinate the definitions in present

---

[6] The third passage is section 1314 (amongst the mitigation provisions of sections 1311 through 1314), and in that instance, this phrase appears only in connection with a cross-reference to section 6211.

law; it is not intended to be substantively different from present law." H.R. Rept. No. 101–247, at 1394 (1989), 1989 U.S.C.C.A.N. 1906, 2864. *But see* H.R. Conf. Rept. No. 101–386, at 654 (1989), 1989 U.S.C.C.A.N. 3018, 3257. Given that sections 6211(a)(1)(A) and 6664(a)(1)(A) use the same phrase and that the two provisions are contextually and historically related, we turn to section 6211(a)(1)(A) to assist us in interpreting the provision before us.

*Credits Reduce Tax Shown on Return*

Before we reach the question of whether the three tax credits at issue can reduce the amount shown as tax below zero, we must first decide whether these credits reduce the amount shown as tax to any extent. Although section 6664 is silent on this point, section 6211 is instructive.

Section 6211 expressly excludes certain credits from the amount shown on the return as the tax by the taxpayer, which is in turn used to calculate the amount of a deficiency. Specifically, section 6211(b) provides:

> SEC. 6211(b). RULES FOR APPLICATION OF SUBSECTION (a).—For purposes of this section—
>
>   (1) The tax imposed by subtitle A and the tax shown on the return shall both be determined without regard to payments on account of estimated tax, without regard to the credit under section 31, without regard to the credit under section 33, and without regard to any credits resulting from the collection of amounts assessed under section 6851 or 6852 (relating to termination assessments).[7]

Because the Code specifies that certain credits should be disregarded when determining the tax shown on the return, we can infer that other credits should not be disregarded. Under the canon *expressio unius est exclusio alterius*, if a statute provides specific exceptions to a general rule, we may infer that Congress intended to exclude any further exceptions. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *see also Catterall v. Commissioner*, 68 T.C. 413, 421 (1977), *aff'd sub nom. Vorbleski v. Commissioner*, 589 F.2d 123 (3d Cir. 1978). This is not a rigid rule and will not apply if the result "is

---

[7] This section was also present in substantially the same form before the 1989 amendments that removed the express cross-reference from the definition of an underpayment to the definition of a deficiency.

contrary to all other textual and contextual evidence of congressional intent." *Burns v. United States*, 501 U.S. 129, 136 (1991); *see also Neuberger v. Commissioner*, 311 U.S. 83, 88 (1940). In this instance we see no evidence of a contrary congressional intent. Whether we review the context surrounding the definition of an underpayment under section 6664 or the definition of a deficiency under section 6211, the statute is silent as to the treatment of the refundable tax credits at issue here. In the absence of anything showing a contrary congressional intent, the canon *expressio unius est exclusio alterius* applies. Because Congress expressly chose to disregard certain credits when determining the amount shown as the tax by the taxpayer on his return when calculating a deficiency, it follows that other credits should be taken into account to reduce the amount so shown. Because the phrase "the amount shown as the tax by the taxpayer" appears in both sections, 6211 and 6664, we likewise conclude that the amount shown as the tax by the taxpayer on his return when calculating an underpayment should be reduced by refundable credits.

Although not specifically addressed in our prior opinions, this holding is consistent with many previous opinions of this Court, including *Feller*, where the claiming of a credit to which a taxpayer was not entitled resulted in the imposition of a penalty. Most credits are identified in the Code as a "credit against the tax imposed".[8] Petitioners attach special meaning to the phrase "credit against the tax" and infer from

---

[8] *See* sec. 21 (expenses for household and dependent care services necessary for gainful employment); sec. 22 (credit for the elderly and the permanently and totally disabled); sec. 23 (adoption expenses); sec. 24 (child tax credit); sec. 25 (interest on certain home mortgages); sec. 25A (hope and lifetime learning credits); sec. 25B (elective deferrals and IRA contributions by certain individuals); sec. 25C (nonbusiness energy property); sec. 25D (residential energy efficient property); sec. 27 (taxes of foreign countries and possessions of the United States; possession tax credit); sec. 30 (credit for qualified electric vehicles); sec. 30A (Puerto Rico economic activity credit); sec. 30B (alternative motor vehicle credit); sec. 30C (alternative fuel vehicle refueling property credit); sec. 38 (general business credit); sec. 53 (credit for prior year minimum tax liability); sec. 54 (credit to holders of clean renewable energy bonds). In using that same phrase, the general business credit under section 38 brings along with it more than 30 other credits that must also be considered a "credit against the tax". *See* sec. 38(b).

those words that a credit against the tax is a payment and not part of the tax itself. Whether a particular tax credit is a refundable credit or not, the Code uses this same phrase "credit against the tax". *Compare* sec. 32(a)(1) (earned income credit applied as a "credit against the tax imposed") *with* sec. 38(a) (general business credit applied as a "credit against the tax imposed"). And we have imposed penalties on disallowed credits against the tax under many provisions.[9] In doing so, we necessarily reduced the amount shown as tax by the reported credit against the tax. Nothing in the Code suggested that such credits should have been removed from the computation, and nothing in the Code suggests that we should do so now.

*No Negative Tax*

Having concluded that credits can reduce the amount shown as tax on the return, we must next address the Clinic's argument that the earned income credit, additional child tax credit, and recovery rebate credit cannot reduce the amount shown as the tax on the return below zero. We again turn to canons of statutory construction.

Section 6664(a) is silent on the issue of whether the amount shown as the tax on the return can be negative. But as noted previously, where the same phrase appears multiple times in the same statutory scheme, we can look to those other appearances to help discern the meaning. Conveniently, section 6211 directly addresses the question of a negative tax. Section 6211(b)(4) provides:

SEC. 6211(b). RULES FOR APPLICATION OF SUBSECTION (a).—For purposes of this section—

\* \* \* \* \* \* \*

(4) For purposes of subsection (a)—

_____

[9] *See, e.g.*, *Carlebach v. Commissioner*, 139 T.C. 1 (2012) (imposing a penalty on disallowed child care credit under section 21 and child tax credit under section 24); *Langley v. Commissioner*, T.C. Memo. 2013–22 (hope and lifetime learning credits under section 25A); *Ellis-Babino v. Commissioner*, T.C. Memo. 2012–127 (general business credit under section 38, including the increasing research activities credit under section 41); *A.J. Concrete Pumping, Inc. v. Commissioner*, T.C. Memo. 2001–42 (general business credit under section 38, including the investment tax credit under section 46).

(A) any excess of the sum of the credits allowable under sections 24(d), 32, 34, 35, 36, 53(e), and 6428 over the tax imposed by subtitle A (determined without regard to such credits), and

(B) any excess of the sum of such credits as shown by the taxpayer on his return over the amount shown as the tax by the taxpayer on such return (determined without regard to such credits),

shall be taken into account as negative amounts of tax.

More simply stated, any excess of the refundable credits claimed as compared to the amount to which the taxpayer was entitled is treated as a negative tax.

We can infer from this provision that the specified refundable credits would not be considered a negative tax but for this provision. In this instance, the surplusage canon leads us to conclude that excess credits are not otherwise a negative tax. Under the surplusage canon we are to give effect to every provision Congress has enacted. *United States v. Menasche*, 348 U.S. 528, 538–539 (1955) ("'The cardinal principle of statutory construction is to save and not to destroy.' *Labor Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937). It is our duty 'to give effect, if possible, to every clause and word of a statute,' *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883), rather than to emasculate an entire section[.]"); *see also Tucker v. Commissioner*, 135 T.C. 114, 154 (2010) ("[W]e decline to read words out of the statute; rather, we attempt to give meaning to every word that Congress enacted[.]"). If, as respondent suggests, these credits are considered a negative tax, then section 6211(b)(4) would be mere surplusage; it would be wholly unnecessary. To give section 6211(b)(4) any meaning, we must assume that, in determining the amount shown as the tax, the specified credits would not be considered a negative tax but for that provision. We then use this conclusion to inform our views on the use of the word "underpayment" in section 6664.

Based on the negative tax provision of section 6211(b)(4), we conclude that these credits do not yield a negative tax for purposes of defining an underpayment under section 6664(a)(1)(A). We return to our premise that, because section 6664(a)(1)(A) uses the same phrase "the amount shown as the tax by the taxpayer" as section 6211(a), we should interpret it consistently with section 6211. And we have concluded that, but for section 6211(b)(4), the specified refundable

credits would not yield a negative tax for the amount shown as the tax by the taxpayer. Thus, we must likewise conclude that these refundable credits would not yield a negative tax for the amount shown as the tax under section 6664 unless there is a counterpart to section 6211(b)(4). In turning to section 6664, we find no counterpart to section 6211(b)(4). Accordingly, excess earned income credits, additional child tax credits, and recovery rebate credits do not result in a negative tax for the amount shown as the tax by the taxpayer on his return.

We note that our conclusion breaks the historical link between the definitions of a deficiency and an underpayment; however, it was Congress that made that break. As we previously noted, the definition of an underpayment was linked to the definition of a deficiency until 1989. In 1988 Congress amended section 6211(b)(4) to specifically provide that certain refundable credits could be taken into account as negative amounts of tax. Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100–647, sec. 1015(r)(2), 102 Stat. at 3572. [10] Because this occurred when the definition of an underpayment was linked to the definition of a deficiency, it meant that those credits would be considered a negative tax for the definition of an underpayment as well. We previously noted that Congress expressed the view that uncoupling the link between sections 6664(a)(1)(A) and 6211(a)(1)(A) was not intended to "substantively" alter the definition of an underpayment. H.R. Rept. No. 101–247, *supra* at 1394, 1989 U.S.C.C.A.N. at 2864. But as was noted in *Feller*, the legislative history states that "the new definition was intended to 'simplify and coordinate' diverse 'underpayment' definitions under former law. And in fact the new 'underpayment' defini-

---

[10] Of the credits at issue here, only the earned income credit was included in section 6211(b)(4) in 1988. In 1998 Congress added the additional child tax credit to the Code, and in 2000 it incorporated the credit in the negative tax provision of section 6211(b)(4). Consolidated Appropriations Act, 2001, Pub. L. No. 106–554, sec. 1(a)(7), 114 Stat. at 2763 (2000) (amending sec. 6211(b)(4)); Taxpayer Relief Act of 1997, Pub. L. No. 105–34, sec. 101(a), 111 Stat. at 788 (adding sec. 24). In 2008 Congress added the rebate recovery credit to the Code and incorporated the credit in the negative tax provision of section 6211(b)(4). Economic Stimulus Act of 2008, Pub. L. No. 110–185, sec. 101(b)(1), 122 Stat. at 615 (amending sec. 6211(b)(4)); *id.* sec. 101(a), 122 Stat. at 613 (amending sec. 6428(a)).

tion in section 6664(a) differs in various ways from the old 'underpayment' definitions which it replaced." *Feller v. Commissioner*, 135 T.C. at 514–515 (Thornton, J., concurring) (quoting H.R. Rept. No. 101–247, *supra* at 1394, 1989 U.S.C.C.A.N. at 2864). One of those differences is that Congress did not include a counterpart to section 6211(b)(4) in section 6664(a). If this is not what Congress intended, it is not for the Court to reform the statute. *Verito v. Commissioner*, 43 T.C. 429, 443 (1965) ("We were not given the responsibility of writing statutes, but we do have the responsibility of interpreting them as we find them.").

Moreover, Congress has made it clear in analogous circumstances when it intended refundable credits to be taken into account. We have already shown how Congress addressed a "negative tax" in section 6211. Likewise, in the preparer penalty of section 6694, Congress made it clear that refunded amounts like the refundable credits at issue here should be taken into account for purposes of determining an underpayment.

Section 6694 imposes a penalty on a tax return preparer who prepares a return with an "unreasonable position" as that term is defined in section 6694(a)(2). For the penalty to apply, there must be an "understatement of liability". Sec. 6694(a)(1)(A). Congress, however, made it clear that an understatement of liability includes a situations where a return has overstated credits that yield a refund. Specifically, section 6694(e) provides in relevant part:

SEC. 6694(e). UNDERSTATEMENT OF LIABILITY DEFINED.—For purposes of this section, the term "understatement of liability" means any understatement of the net amount payable with respect to any tax imposed by this title or any overstatement of the net amount creditable or refundable with respect to any such tax. * * *

By including the phrase "or any overstatement of the net amount creditable or refundable", Congress explicitly defined "understatement" for preparer penalty purposes to include refundable credits. Congress could have similarly taken such credits into account under the definition of an underpayment under section 6664(a), but it did not.

*Rule of Lenity*

Beyond the previously discussed canons of statutory construction on which we rely, our Opinion is further supported by another canon: the rule of lenity.

The rule of lenity is an "ancient maxim" that "is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment." *United States v. Wiltberger*, 18 U.S. 76, 95 (1820). Thus, under the rule of lenity statutes that impose a penalty are to be construed in favor of the more lenient punishment. Black's Law Dictionary 1449 (9th ed. 2009). And although often considered in the criminal context, the rule of lenity has been applied in the civil context and specifically with regard to civil tax penalties.

In *Commissioner v. Acker*, 361 U.S. 87 (1959), the IRS sought to impose two penalties on a taxpayer as a result of the taxpayer's failure to file a declaration of estimated income tax. One penalty was for a failure to file the declaration. The other, however, was for a "substantial underestimate of estimated tax". The latter penalty came about because, by regulation, the failure to file a declaration of estimated tax was deemed to be an estimate of zero. In rejecting the latter penalty, the Supreme Court stated: "We are here concerned with a taxing Act which imposes a penalty. The law is settled that 'penal statutes are to be construed strictly,' and that one 'is not to be subjected to a penalty unless the words of the statute plainly impose it'." *Id.* at 91 (fn. ref. omitted) (quoting *FCC v. Am. Broadcasting Co.*, 347 U.S. 284, 296 (1954), and *Keppel v. Tiffin Sav. Bank*, 197 U.S. 356, 362 (1905)).

Here, the words of the relevant statutes do not plainly impose a penalty on refunds resulting from overstated earned income credits, additional child tax credits, or recovery rebate credits. Because the penalty is not plainly imposed on the refundable portion of the credits, the rule of lenity further confirms what we have already concluded: that section 6662 does not impose a penalty on the refundable

portion of erroneously claimed earned income credits, additional child tax credits, and recovery rebate credits.

### Additional Issues Raised by Respondent

We have concluded that the earned income credit, additional child tax credit, and recovery rebate credit can be taken into account to reduce the amount shown as tax on the return, but not below zero. We turn to two additional points raised by respondent.

#### Auer Deference

Respondent urges us to apply *Auer* deference to his interpretation on brief of the phrase "the amount shown as the tax by the taxpayer on his return". *See Auer*, 519 U.S. 452. When applying *Auer* deference, a court defers to an agency's interpretation of its own ambiguous regulation, even where that interpretation appears on brief. *Chase Bank USA, N.A. v. McCoy*, 562 U.S. ____, ____, 131 S. Ct. 871, 880 (2011). Judicial deference need not give way to judicial abdication. The regulations are silent on the issue before us, and respondent's position on brief is at least arguably inconsistent with the statute.

Although we do not in this instance defer to respondent's interpretation on brief, we note that our interpretation of the statute is not inconsistent with the regulation. To the extent the regulation implies that refundable credits should be taken into account in determining the amount shown as the tax, we have done so. But, consistent with the statutory scheme, we have done so only to the extent that it does not give rise to a negative tax. On this, the regulation is silent.

#### Gap in the Penalty Regime

Respondent also asserts that if his position is not adopted there would be a gap in the penalty regime. Respondent's point is not well taken for at least three reasons.

First, to the extent respondent's claim is that a claim of excess refundable credits could not be penalized under our holding, respondent is mistaken. To the extent the credits reduce the amount of tax shown on the return, the disallowance of those credits will result in an increased underpayment upon which a section 6662 accuracy-related penalty could be imposed. More simply stated, the portion of a dis-

allowed credit that reduced a tax liability may be subject to an accuracy-related penalty.

Second, to the extent an improperly claimed credit resulted in a refund, it may be subject to a penalty under section 6676. In 2007 Congress added section 6676, which imposes a 20% penalty on an erroneous claim for refund. Small Business and Work Opportunity Tax Act of 2007, Pub. L. No. 110–28, sec. 8247(a), 121 Stat. at 204. An erroneous claim for refund is any claim for refund of an "excessive amount", which is defined as "the amount by which the amount of the claim for refund or credit for any taxable year exceeds the amount of such claim allowable". Sec. 6676(b). Such a penalty might have applied here, if respondent had asserted it. Thus, there is no gap in the penalty regime. To the extent an erroneously claimed credit reduces a tax liability, it may be subject to an accuracy-related penalty under section 6662; to the extent that credit generates a refund, it may be subject to a penalty under section 6676.

And third, respondent is incorrect that there would be a gap in the penalty regime insofar as an erroneously claimed earned income tax credit is concerned. In 1997 Congress carved out a separate sanction for taxpayers who improperly claim the earned income tax credit. *See* sec. 32(k) (added by the Taxpayer Relief Act of 1997, Pub. L. No. 105–34, sec. 1085, 111 Stat. at 955). Specifically, section 32(k) provides that a false claim to the earned income credit in one tax year results in the denial of the earned income credit in the next two tax years "[If] there was a final determination that the taxpayer's claim of credit * * * was due to reckless or intentional disregard of rules and regulations". [11] And it appears that Congress intended that the two-year bar be in lieu of any other monetary sanctions. For example, the penalty under section 6676 for an erroneous claim for refund specifically excludes a claim for refund relating to an erroneous earned income credit.

*Conclusion*

In the case of an underpayment due to negligence or a substantial understatement of income tax, among other

---

[11] The period of disallowance is 10 years if the claim of credit is due to fraud.

things, section 6662 imposes an accuracy-related penalty on the underpayment. Section 6664(a) defines the term "underpayment" in part by reference to the amount shown as the tax by the taxpayer on his return. The earned income credit, additional child tax credit, and recovery rebate credit all reduce the amount shown as the tax by the taxpayer on his return, but not below zero.

To reflect the foregoing and concessions,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

THORNTON, VASQUEZ, GALE, WHERRY, KROUPA, HOLMES, PARIS, KERRIGAN, and LAUBER, *JJ*., agree with this opinion of the Court.

FOLEY, *J*., did not participate in the consideration of this opinion.

———————

GUSTAFSON, *J*., dissenting: The Commissioner argues that petitioners are liable under section 6662(a) for an accuracy-related penalty of about $1,494, because of an "under-payment" of their tax. Colloquially, one could certainly say that petitioners "underpaid" their 2008 income tax by claiming refundable credits to which they were not entitled. However, as the majority opinion explains, in a case like this one an "underpayment" is defined in section 6664(a)(1)(A), and it exists only where the tax "imposed" exceeds the tax "shown" (i.e., "the amount shown as the tax by the taxpayer on his return"). The majority opinion corrects one significant fallacy in the Commissioner's reckoning (i.e., the Commissioner's erroneous assumption that there can be a "negative amount of tax" for purposes of computing the underpayment to be penalized); but the majority still holds petitioners liable for a lesser penalty (about $29) that, though modest in amount, contradicts an important principle: The IRS has no authority to impose, and the courts have no authority to sustain, a penalty that Congress did not enact. [1]

———————

[1] In *Feller v. Commissioner*, 135 T.C. 497, 526–543 (2010) (Gustafson, J., dissenting), I made a similar critique of this Court's Opinion imposing the fraud penalty of section 6663; but in one respect the majority's error in this case is more extreme: The outcome in *Feller* was supported by a regu-

## I. *Introduction*

For 2008 petitioners filed a Form 1040, "U.S. Individual Income Tax Return", on which they reported income and tax but also claimed refundable credits (to which they were not entitled). As a result, petitioners incorrectly reported no balance due but rather claimed an overpayment and a refund to which they were not entitled.

In particular, Form 1040 for 2008 required petitioners to report "Tax" on line 44, "Alternative minimum tax" on line 45, and the total of those on line 46. The form called for various non-refundable credit amounts not at issue here on lines 47–55, "Self-employment tax" on line 57, and "total tax" on line 61. As their "total tax", petitioners reported $144. (I submit that this $144 amount is "the amount shown as the tax by the taxpayer on his return" for purposes of section 6664(a)(1)(A)).

Thereafter, in the section of Form 1040 entitled "Payments", petitioners claimed an "Earned income credit" (line 64a), an "Additional child tax credit" (line 66), and a "Recovery rebate credit" (line 70), to which they were not actually entitled. They reported "total payments" of $7,471 (consisting solely of those excessive claimed credits) and therefore reported an "amount you overpaid" of $7,327 on line 72, and they requested on line 73 that it all be "refunded to you".

The IRS determined against petitioners an accuracy-related penalty pursuant to section 6662(a). That penalty depends on (among other things) "the amount shown as the tax by the taxpayer on his return". Rather than using the "total tax" of $144 that petitioners reported on line 61 of their return as the tax shown, the IRS used negative $7,327 (i.e., the erroneous overpayment petitioners claimed on line 72), and the majority uses zero (an amount calculated by

---

lation, i.e., 26 C.F.R. section 1.6664–2(c)(1), Income Tax Regs. (which the majority held valid, over my dissent); but in this case there is no equivalent regulation to define "tax shown" in such a way as to support the imposition of the penalty. This absence of a regulation makes all the more appropriate the invocation of the rule of lenity (discussed below) to construe the penalty statute narrowly. *Cf. Babbitt v. Sweet Home Ch. of Comtys. for a Great Or.*, 515 U.S. 687, 704 n.18 (1995) ("We have applied the rule of lenity * * * where no regulation was present").

subtracting the excess credits from the tax reported, but not going below zero). Neither of these approaches is warranted by the statute.

II. *The governing law*

Under our Constitution, it is Congress that enacts laws. *See* U.S. Const. art. I, sec. 7, cl. 1. The first enumerated power given to Congress (and not to the Executive or the courts) is the "Power To lay and collect Taxes, Duties, Imposts and Excises". *Id.*, sec. 8, cl. 1. [2] As the Supreme Court observed in *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001):

> Article I, § 1, of the Constitution vests "[a]ll legislative Powers herein granted * * * in a Congress of the United States." This text permits no delegation of those powers * * *.

Only the legislature can legislate. Only Congress can enact tax laws.

Section 6664(a) defines the "underpayment" to which the accuracy-related penalty of section 6662 applies. Section 6664(a) provides as follows:

> SEC. 6664(a). UNDERPAYMENT.—For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—
>     (1) the sum of—
>         (A) the amount shown as the tax by the taxpayer on his return, plus
>         (B) amounts not so shown previously assessed (or collected without assessment), over
>     (2) the amount of rebates made.
> For purposes of paragraph (2), the term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the

---

[2] Article I, Section 7, Clause 1 of the Constitution includes an additional democratic provision particular to tax law: "All bills for raising revenue shall originate in the House of Representatives"—i.e., the house that (in James Madison's words) "speak[s] the known and determined sense of a majority of the people". *See* The Federalist No. 58 (James Madison) (the two houses have "equal authority * * * on all legislative subjects, except the originating of money bills", which authority is conferred on "the House [of Representatives], composed of the greater number of members, * * * and speaking the known and determined sense of a majority of the people"). Article I, Section 9, Clause 4 of the Constitution originally prohibited "direct" taxes; and when the Constitution was amended to curtail that prohibition, the Sixteenth Amendment provided (echoing Article I, section 8) that "[t]he Congress shall have power to lay and collect taxes on incomes".

ground that the tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made.

In simplified terms, the "underpayment" is the excess of one's actual liability over his reported liability—i.e., tax "imposed" minus tax "shown" equals "underpayment".

By statute Congress has authorized the Secretary of the Treasury to prescribe "regulations for the enforcement of" the Internal Revenue Code, *see* sec. 7805(a); and where such authorized regulations interpret a statute, the courts defer to that interpretation, *see Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–845 (1984). Notably, in *Feller v. Commissioner*, 135 T.C. 497 (2010), a majority of this Court deferred to such a regulation—i.e., 26 C.F.R. section 1.6664–2(c)(1), Income Tax Regs.—to define tax "shown" (and thereby to define "underpayment") in a manner not suggested in the statute. [3] However, the regulations that define an "underpayment" include no provision to the effect that excess refundable credits somehow reduce tax "shown".

There is no other law governing the issue in this case— unless we invent it.

III. *Discussion*

Without doubt, Congress could impose a penalty for claiming refundable credits to which one is not entitled. The question we face is whether in fact Congress did so in section 6662(a) when it imposed the accuracy-related penalty on "underpayments", defined in section 6664(a)(1)(A) as "tax imposed" minus "amount shown", or whether instead the IRS and the majority go beyond the statute in determining a penalty liability for improperly claimed refundable credits.

---

[3] *See* note 1, above. An analogous regulation defines "tax shown" for purposes of avoiding the penalty for failure to pay estimated tax: One can pay "100 percent of the *tax shown on the return* of the individual for the preceding taxable year." Sec. 6654(d)(1)(B)(ii) (emphasis added). The statute is silent about credits, but the regulations make it appear that "tax shown" means tax minus refundable credits (but not withholding credits or payments of estimated tax). *See* 26 C.F.R. sec. 1.6654–2(a)(1)(i), (b)(1)(iii), (b)(2)(i). But again, there is no such regulation pertinent to the accuracy-related penalty of section 6662.

A. *The Commissioner's position and the majority opinion are at odds with the plain meaning of "the amount shown as the tax by the taxpayer on his return".*

The term at issue is "the amount [1] shown [2] as the tax [3] by the taxpayer [4] on his return". Sec. 6664(a)(1)(A). Under section 6664(a) this amount is subtracted from "tax imposed" (i.e., the actual tax liability) to yield the "underpayment". The plain meaning of this term could hardly be clearer:

In the first place, the amount in section 6664(a)(1)(A) is an amount "shown". It is therefore an amount that is visible. The plain language steers us away from an amount that would need to be determined by investigation or correction and points us simply to what is "shown"—in this case, the $144 amount shown by petitioners as "total tax" on line 61. However, both the Commissioner and the majority opinion substitute for this amount "shown" a lesser amount computed by subtracting excess credits. Neither of the resulting numbers (i.e., neither the Commissioner's proposed negative $7,327 nor the majority's zero amount) is shown anywhere on petitioners' 2008 return as an amount of "tax", so the Commissioner and the majority look to an amount that is *not* shown as tax and thereby ignore the plain language of the statute that describes an amount "shown".

Second, the amount in section 6664(a)(1)(A) is "tax". Of course, the Code also has provisions about other kinds of amounts—e.g., of income, deductions, costs, basis, exclusions, credits, payments, penalties, and so on—but section 6664(a)(1)(A) refers to an amount of "tax", a term not at all interchangeable with those other kinds of amounts. But both the Commissioner and the majority compute an amount that consists of tax reduced by excess refundable credits. However, the plain meaning of the statutory language restricts us to "tax" that is shown on the return, and the statutory language gives no warrant for injecting excess credits into the equation.

Third, section 6664(a)(1)(A) looks to an amount shown "by the taxpayer". Of course, the Code authorizes the IRS to make its own determinations of amounts relevant to tax liabilities; but plainly section 6664(a)(1)(A) describes an amount shown "by the taxpayer". The Commissioner and the

majority correct the amount shown "by the taxpayer[s]" on their return, $144, and replace it with other numbers that they determine. Their methods thus wander from the plain language of section 6664(a)(1)(A), which looks to an amount shown "by the taxpayer".

Fourth, the amount in section 6664(a)(1)(A) is an amount shown as tax "on his return". The Commissioner designed Form 1040 and designated certain items and not others as "tax". Petitioners were required to use Form 1040 and did so. By using an amount other than the $144 that petitioners reported as "total tax" on the prescribed return, the Commissioner and the majority contradict the plain meaning of the statutory description of an amount of tax "on the return".

B. *The Form 1040 "return" has never "shown as the tax" an amount reduced by refundable credits.*

The critical term in section 6664(a)(1)(A) is the "amount shown as the tax *on the return*". (Emphasis added.) Section 6011(a) authorizes the IRS to prescribe returns and requires taxpayers to use them. In 26 C.F.R. section 1.6012–1(a)(6), Income Tax Regs., the IRS has prescribed Form 1040. It is therefore appropriate to accord great weight to the manner in which tax and refundable credits are characterized on Form 1040.

In fact, Form 1040 calls for a computation of "total tax" (without reduction by refundable credits) and only then calls for the refundable credits to be reported as "payments", consistent with the Code.[4] Form 1040 was so arranged when refundable credits were first allowed in 1975;[5] and when

---

[4] The portion of a refundable credit that exceeds the tax liability is an "overpayment", *see* secs. 37, 6401(b)(1); an *over*payment is by definition a "part of the amount of the *payment*", sec. 6401(a) (emphasis added); and the refundable credit is therefore treated in the Code as a payment. By contrast, *non*refundable credits are limited to and can never exceed the amount of the tax liability, *see* sec. 26(a), and thus never reduce the liability below zero.

[5] When the first refundable credit (the earned income tax credit) appeared on the Form 1040 for 1975, "Tax" was computed on line 16a and was reduced by certain credits before the addition of "Other taxes" (line 19) to yield a "Total" (line 20). From that were subtracted withholding, estimated payments, the EITC (line 21c), and other payments to yield (on line 23 or line 24) either a "BALANCE DUE IRS" (not a "tax") or an

Continued

Congress enacted the current penalty regime in 1989 (and employed the "shown * * * on his return" definition), the Form 1040 return most recently in use—i.e., the Form 1040 for 1988—reflected this same arrangement. [6] The IRS has always constructed the Form 1040 return in such a way that "total" tax is figured first and then refundable credits are characterized as "payments" of that tax. The IRS has never prescribed an individual income tax return on which there was "shown as the tax" an amount that had already been reduced by refundable credits.

I do not suggest that IRS forms and instructions are generally precedential. *Cf. Casa De La Jolla Park, Inc. v. Commissioner*, 94 T.C. 384, 396 (1990) ("The sources of authoritative law in the tax field are the statute and regulations and not government publications"). But here the statutory definition of "underpayment" utterly depends on and incorporates the "return". By definition, petitioners cannot owe the penalty unless they under-reported "the amount *shown as the tax * * * on * * * [their] return*" (emphasis added)—but the parties and the majority admit that the "total tax" of $144 that they did show on their return was

_____

"amount OVERPAID". That is, the 1975 Form 1040 reflected that credit amounts like these are in the nature of payments, not tax. The Form 1040 for 2008 was similar in all material respects to the Form 1040 for 1975.

[6] On the Form 1040 for 1988, the "Tax Computation" section (consisting of lines 32 through 40) included, after the computation of taxable income, a line 38 on which one was to "Enter tax", a line 39 for "Additional taxes", and a line 40 that totaled lines 38 and 39. The next section, entitled "Credits" (lines 41 through 47), consisted not of refundable credits in the nature of payments against the tax liability but instead credits (such as the child care credit and the foreign tax credit) that are taken into account in figuring the tax liability. Thereafter, a section of "Other Taxes" (lines 48 through 53) included, for example, the self-employment tax and the alternative minimum tax; and it ended with line 53, which read: "Add lines 47 through 52. This is your **total tax**" (bold in original). Only after this "total tax" on line 53 did the 1988 return include, in the section of the return entitled "Payments", an entry (at line 56) for "Earned income credit", which was one of the items that yielded "total payments" on line 61. The net amount due after these "total payments" was *not* referred to as tax, but either as an "amount OVERPAID" (line 62) or as an "AMOUNT YOU OWE" (line 65). This is what in fact appeared on a "return" at the time Congress defined a taxpayer's underpayment as "tax imposed" minus tax "shown * * * on his return". The Form 1040 for 2008 was similar in all material respects to the Form 1040 for 1988.

correct. Everyone agrees that the tax imposed, $144, *was* the "total tax" amount shown on the return. Given the wording of section 6664(a)(1)(A), one cannot ignore petitioners' actual "return" in finding an underpayment and imposing the accuracy-related penalty.

C. *The definition of "deficiency" in section 6211 does not alter the definition of "underpayment" in section 6664(a).*

To interpret the "underpayment" definition in section 6664(a), the majority looks to the "deficiency" definition in section 6211(b)(1), which employs similar phrases, but the majority thereby draws incorrect inferences. In defining a tax "deficiency", section 6211(b)(1) provides that "[t]he tax imposed * * * and the tax shown * * * shall both be determined without regard to" certain credits but does not provide for disregarding the refundable credits at issue here. The majority therefore invokes the canon *expressio unius est exclusio alterius* and infers that, as a general rule, "tax shown" must therefore include all those credits (else no exclusion of any would have been necessary). And the majority opinion goes on to note that no such exclusions are provided in section 6664(a) defining "underpayment", and therefore "underpayment" must be determined *with* regard to these unmentioned credits. That is, the opinion effectively holds that "tax imposed" and "tax shown" must generally mean tax *after* (among other things) the refundable credits at issue here. For two reasons this argument is untenable.

First, if not only tax "shown" but also "tax *imposed* by this title*" (emphasis added) should generally be understood to refer to tax net of refundable credits, then other Code sections that refer to "tax imposed by this title" but that do not explicitly exclude the netting of credits might become very problematic. Section 6001 requires that "[e]very person liable for any tax imposed by this title * * * shall keep such records * * * as the Secretary may from time to time prescribe", and section 6011(a) requires that a return be filed by "any person made liable for any tax imposed by this title". For taxpayers who are entitled to refundable credits, these requirements apply not only if they report a balance due but also if they are entitled to a refund. Section 6501(a) provides

for assessment of "tax imposed by this title" (and the IRS duly assessed the $144 "total tax" that petitioners reported on their 2008 return and separately recorded the allowance of the credits claimed). Section 6511(a) sets a deadline for the filing of a claim for refund of "any tax imposed by this title". It would be nonsense to suggest that this deadline does not apply where the claimed overpayment arises from refundable credits.

These provisions have always been (rightly) understood to apply where there is a tax liability, whether or not that liability has been satisfied by refundable credits. That is, it is a truism that "tax imposed" does *not* generally mean "amount of tax due after application of refundable credits". It is hard to imagine administering the provisions listed above if it were otherwise. The inference that an internal revenue statute that addresses "tax imposed"—or "tax shown"—without mentioning refundable credits must refer to the tax due *after* such credits is manifestly unwarranted.

Second, the majority states that it "see[s] no evidence of a contrary congressional intent" (i.e., intent contrary to its *expressio unius* construction), but it describes no inquiry into the congressional intent that did produce the critical language in section 6211. *See* op. Ct. p. 388. In fact, the clarification in section 6211(b)(1) that "[t]he tax imposed * * * and the tax shown * * * shall both be determined without regard to" withholding credits is a truism whose presence has a historical explanation. After income tax withholding was inaugurated in 1943, the definition of "deficiency" had to be changed in order to prevent non-rebate refunds (i.e., refunds of over-withheld tax) from inappropriately increasing the amount of a deficiency. In 1944 Congress therefore employed and defined the concept of a "rebate" refund (now in section 6211(b)(2)) and—important to the current discussion—noted that tax "imposed" and tax "shown" did not include the relatively new withholding credit. *See Feller v. Commissioner*, 135 T.C. at 536–538.

At that time, *there were no refundable credits*. Congress' 1944 *expressio* as to withholding credits made no implication whatsoever as to the *alterius* of refundable credits that would not exist until 1975. The silence of section 6211(b)(1) about refundable credits (which did not then exist) should not give rise to an aberrant definition of section 6664(a)(1)(a) that

assumes that "tax" imposed and shown somehow includes refundable credits not mentioned in either statute.

D. *The rule of lenity calls for a strict construction of the penalty*.

The majority opinion is correct that the "rule of lenity" requires that penalty statutes be "construed strictly". *Commissioner v. Acker*, 361 U.S. 87, 91 (1959); *see* op. Ct. pp. 392–393. The majority aptly invokes this canon to conclude "that section 6662 does not impose a penalty on the refundable portion of erroneously claimed earned income credits, additional child tax credits, and recovery rebate credits", *see* op. Ct. p. 393; but it fails to observe that the same canon counsels against expanding the penalty to make it apply where refundable credits were overstated but "tax" was *not* understated.

Applying the rule of lenity, we should construe "tax" strictly to mean tax, rather than construing it loosely to mean tax minus refundable credits. We should construe "shown as the tax * * * on his return" strictly to mean shown as the tax on his return, rather than construing it loosely to mean *not* really shown as the tax on his return.

IV. *Conclusion*

The parties and the majority agree that the tax "imposed" is $144, and there is no dispute that $144 was shown as the "total tax" on line 61 of petitioners' return. There is therefore no "underpayment" as defined in section 6664(a)(1)(A) and, as a result, no penalty can be imposed under section 6662(a).

HALPERN and GOEKE, *JJ.*, agree with this dissent.

———————

MORRISON, *J.*, dissenting: On their joint federal tax return for 2008, Rand and Klugman claimed that they were entitled to three types of refundable credits: the earned income credit, the additional child tax credit, and the recovery rebate credit. To buttress their claims to these credits, Rand and Klugman falsely reported on their tax return:

(1) that they lived in the United States;
(2) that their children lived in the United States;

(3) that they had earned income of $18,148, including $17,200 in wages supposedly paid to Rand by the Yeshivas Brisk Institute in Israel.

Rand and Klugman reported that their total tax liability, before credits, was $144. This amount was attributable to self-employment taxes. The refundable credits they claimed total $7,471, and they sought a refund of $7,327 ($7,471 − $144).

The statements on the return were false; Rand and Klugman were not entitled to the refundable credits they claimed. The issue remaining in this case is to determine the amount of their penalty under section 6662.

Section 6662 imposes a 20% penalty on underpayments associated with inaccurate tax returns. For returns that are fraudulent, a 75% penalty applies under section 6663. The amount of either penalty is mathematically dependent on the amount of the underpayment. The amount of the underpayment is in turn a function of four variables, including "the amount [of tax] shown as the tax by the taxpayer on his return". Sec. 6664(a)(1)(A). This variable is referred to here as the "tax shown". A disagreement about how to calculate this variable divides our Judges in this case.

The Court holds that the "tax shown" for the purpose of calculating an underpayment cannot be less than zero. Therefore, the Court holds that the "tax shown" on Rand and Klugman's return is zero. In my view, the "tax shown" on the return can be less than zero. I would hold that the "tax shown" on Rand and Klugman's return is $144 (the amount they reported on their return for self-employment tax) minus $7,471 (the refundable credits they claimed), which is −$7,327.[1]

Whether the "tax shown" on a return can be negative, i.e., less than zero, in calculating an underpayment is not answered by the plain language of the Internal Revenue Code. Section 1 imposes the federal income tax on individuals. It provides that a "tax" is "imposed" on "taxable income". The tax imposed by section 1 is supplemented by a "tax" imposed by section 1401(a) on "the self-employment

---

[1] The difference between zero and −$7,327 affects the amount of the underpayment. If the "tax shown" is zero, the underpayment is $144. If the "tax shown" is −$7,327, the underpayment is $7,471.

income of every individual". The Code provides for several types of credits "against the" taxes imposed by section 1 and section 1401, among other taxes. Some of these credits, including the additional child tax credit, the earned income credit, and the recovery rebate credit, are refundable credits. *See* secs. 24(d), 32(a), 6428(a). Refundable credits must be refunded by the Internal Revenue Service (IRS) to the taxpayer to the extent they exceed the taxpayer's pre-refundable-credit tax liability. *See* secs. 6402(a), 6401(b).

I disagree with the Court's holding for three primary reasons. First, it does not give sufficient weight to Congress's purpose in enacting section 6662. Second, it relies too heavily on section 6211(b)(4), a section of uncertain relevance to the term in dispute in this case—the term "underpayment". Third, the Court's holding creates a gap in the penalty regime that Congress could not have intended. I address each shortcoming in turn.

When a law is ambiguous, it is appropriate for a court to interpret the law in a manner consistent with Congress's purpose behind the law. *See Thompson v. GMAC, LLC*, 566 F.3d 699, 707 (7th Cir. 2009); *Yarish v. Commissioner*, 139 T.C. 290, 295 (2012). Sections 6662 and 6664 are ambiguous with respect to the meaning of "underpayment" and, specifically, whether "tax shown" can be negative. The Court's strained attempt to arrive at the meaning of "tax shown" demonstrates as much. *See Yarish v. Commissioner*, 139 T.C. at 295 (finding a statutory phrase ambiguous where "it is susceptible of at least two different meanings"). Accordingly, it is appropriate to look to the purpose underlying section 6662 to determine the meaning of "underpayment" and "tax shown".

The purpose of the section 6662 penalty is to deter taxpayers from taking questionable tax return positions that they hope that the IRS will not discover. *Estate of Kluener v. Commissioner*, 154 F.3d 630, 637 (6th Cir. 1998) (section 6662), *aff'g in part, rev'g in part* T.C. Memo. 1996–519; *Caulfield v. Commissioner*, 33 F.3d 991, 994 (8th Cir. 1994) (former section 6661), *aff'g* T.C. Memo. 1993–423; *Karpa v. Commissioner*, 909 F.2d 784, 786 (4th Cir. 1990) (former section 6661), *aff'g* T.C. Memo. 1989–535. Credits are reported by taxpayers on income tax returns, just as items of gross income and deductions are reported on income tax returns.

*See United States v. Gormley*, 201 F.3d 290, 293 (4th Cir. 2000). [2] Taxpayers like Rand and Klugman, who make false claims of credits on their tax returns, hope that the IRS will not discover that they are not entitled to the credits. In the case of refundable credits, the claimants hope that the IRS will write them a refund check (as the IRS did for Rand and Klugman). False claims of credits on returns are as difficult for the IRS to detect as falsely reported items of gross income or deductions. Treating a false claim of credits as part of the "tax shown" on the return, and treating a false claim to refundable credits as potentially a report of negative tax, are consistent with the purpose of section 6662.

Adopting this interpretation would result in imposing a penalty on Rand and Klugman of $1,494. [3] This is not an onerous penalty for filing the false return, considering the false return was designed to generate an undeserved tax benefit of $7,471. By contrast, the Court holds that the appropriate amount of the penalty is 20% of $144, or $29. That is only about 0.39% (less than one two-hundredth) of the tax benefit sought.

The second reason I contest the Court's holding is that it relies unduly on section 6211(b)(4). The Court uses an elaborate scheme of statutory construction to divine the meaning of "underpayment". The Court assumes that, because "tax shown" is used in both section 6664 (defining "underpayment") and section 6211 (defining "deficiency"), the phrase has the same meaning in both sections. Further, because section 6211(b)(4), which applies exclusively to the definition of "deficiency", contains a negative tax provision, the Court infers that "tax shown", in the absence of the subsection (b)(4) modification, cannot be negative. On the basis

_____

[2] Professor Lawrence Zelenak in his article "Tax or Welfare? The Administration of the Earned Income Tax Credit", 52 UCLA L. Rev. 1867, 1869 (2005), observes:

In common with other taxpayer-favorable provisions of the federal income tax, the EITC [the earned income tax credit] is administered on the basis of self-declared eligibility. As with persons claiming other income tax deductions, exclusions, and credits, the EITC claimant makes the entries on her tax return required to determine the amount of EITC to which she is entitled, and pays less tax or receives a bigger refund as a result. * * *

[3] Twenty percent of $7,471 is $1,494. *See* sec. 6662.

of these two assumptions, the Court holds that "tax shown" for purposes of defining "underpayment" cannot be negative. This reasoning is flawed for four reasons.

First, the Court's holding implicitly (and incorrectly) assumes that there is a sure meaning of "tax shown" (as used in section 6211(a)) without the negative tax provision found in subsection (b)(4). This assumption is incorrect, as is illustrated by the fact that the Judges in this case cannot agree on the meaning of "tax shown" in the absence of subsection (b)(4). Because its meaning is unclear, the Court should not rely on it in defining "tax shown" in the definition of "underpayment". The Court holds that "tax shown" (in the absence of subsection (b)(4)) means the tax reported on the return, reduced for credits, but not below zero and that subsection (b)(4) only provides the mechanism by which we reduce "tax shown" into negative territory when calculating a deficiency. Judge Gustafson adopts the view that "tax shown" means the tax reported, unreduced for credits, and that subsection (b)(4) provides the mechanism by which we reduce "tax shown" by credits in calculating a deficiency *and* reduce "tax shown" below zero. Under this view, in the absence of subsection (b)(4), "tax shown" is not reduced by credits at all. These divergent views demonstrate that, while we know the bottom-line result of subsection (b)(4)—that refundable credits can reduce "tax shown" below zero when calculating a deficiency—we do not know how it achieves this result. This suggests that the concept of "tax shown" (as used in section 6211(a), without subsection (b)(4)), is an unreliable indicator of Congress's intended meaning of underpayment and that the Court should not rely on it.

Second, portions of the opinion of the Court suggest that the concepts of deficiency and underpayment are separate, yet the Court draws heavily from section 6211 (defining "deficiency") in defining "tax shown" (as used in the definition of "underpayment") and, indirectly, in defining "underpayment". The Court's approach is inconsistent with Congress's intent. Congress separated the meaning of "underpayment" from the meaning of "deficiency" in 1989. The Court acknowledges as much: "[O]ur conclusion breaks the historical link between the definitions of a deficiency and an underpayment; however, it was Congress that made that break." *See* op. Ct. p. 391. Yet the Court adopts a definition

of "underpayment" that is necessarily, if indirectly, linked to the meaning of "deficiency". Despite Congress's attempt to separate the two terms, the Court's holding requires us to scrutinize the meaning of "deficiency" to determine the meaning of "underpayment". The consequences of this approach are illustrated by the role that amendments to section 6211(b)(4) have inadvertently played in the Court's definition of "tax shown" (for purposes of an underpayment). Section 6211(b)(4) has been amended twice since 1989—in 2000 and in 2008—to incorporate the child tax credit and the recovery rebate credit.[4] Each of these amendments changed the definition of "deficiency". Under the Court's view, both of these amendments also affected the definition of "underpayment" because they indirectly changed the meaning of "tax shown" in the definition of "underpayment". Further, there is nothing in the Court's opinion that suggests that future amendments to section 6211(b)(4) will not similarly affect the meaning of "tax shown" and, as a result, "underpayment". In recognition of the fact that Congress broke the link between deficiency and underpayment in 1989, the better approach would be to ignore section 6211(b)(4) entirely in arriving at the meaning of "tax shown".

A related problem is that the Court's holding is not supported by the legislative history it cites. *See* op. Ct. p. 391 (citing H.R. Rept. No. 101–247, at 1394 (1989), 1989 U.S.C.C.A.N. 1906, 2864). The committee report stated that the establishment of a separate definition of "underpayment" in 1989 (separate from the definition of "deficiency") was not intended to change the definition of "underpayment". H.R. Rept. No. 101–247, at 1394, 1989 U.S.C.C.A.N. at 2864. But taken literally this would mean that the definition of "underpayment" remained unchanged from its pre-1989 definition.

---

[4] In 1997 Congress added the additional child tax credit to the Code, and in 2000 it incorporated the credit in the negative-tax provision of sec. 6211(b)(4). Consolidated Appropriations Act, 2001, Pub. L. No. 106–554, sec. 1(a)(7), 114 Stat. at 2763 (amending sec. 6211(b)(4)); Taxpayer Relief Act of 1997, Pub. L. No. 105–34, sec. 101(a), 111 Stat. at 796 (adding sec. 24). In 2007 Congress added the rebate recovery credit to the Code and incorporated the credit in the negative-tax provision of sec. 6211(b)(4). Economic Stimulus Act of 2008, Pub. L. No. 110–185, sec. 101(b)(1), 122 Stat. at 615 (amending sec. 6211(b)(4)); *id.* sec. 101(a), 122 Stat. at 613 (amending sec. 6428(a)).

Because its pre-1989 definition included the negative-tax provision of section 6211(b)(4), that would mean that the "tax shown" on the return, which could be negative before 1989, can still be negative now.[5] But this would mean that the

─────────

[5] Before 1989 former sec. 6653(a)(1) and (b)(1) imposed penalties equal to percentages of the portions of an underpayment due to negligence (5%) or fraud (75%), respectively. Former sec. 6661(a) (repealed 1989) also imposed a penalty equal to 25% of the portion of an underpayment due to a substantial understatement of income tax. An underpayment was not defined by sec. 6661(a). An underpayment for purposes of the 5% negligence penalty and the 75% fraud penalty was generally defined the same as a deficiency for income tax returns. This rule was found in former sec. 6653(c): "the term 'underpayment' means * * * a deficiency as defined in [section 6211]". *See Feller v. Commissioner*, 135 T.C. 497, 506–507 (2010). In 1988 Congress amended sec. 6211(b)(4) to add the negative-tax provision we summarized above. Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100–647, sec. 1015(r)(2), 102 Stat. at 357 (amending sec. 6211(b)(4)). At the time, of the three types of credits Rand and Klugman claimed, only the earned income credit was in existence and referenced in the negative-tax provision of sec. 6211(b)(4). Thus, sec. 6211(b)(4) provided:

For purposes of subsection (a)—
    (A) any excess of the sum of the credits allowable under sections * * * 32 and 34 over the tax imposed by subtitle A (determined without regard to such credits), and
    (B) any excess of the sum of such credits as shown by the taxpayer on his return over the amount shown as the tax by the taxpayer on such return (determined without regard to such credits),
shall be taken into account as negative amounts of tax.

Because of the cross-reference of former sec. 6653(c) to the definition of "deficiency", the 1988 amendment modified the definition of "underpayment" for purposes of sec. 6653(a)(1) and (b)(1). One year later, in 1989, Congress revamped the system of civil tax penalties. Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. No. 101–239, sec. 7721(a), (c), 103 Stat. at 2395, 2399. It repealed former sec. 6653; it added sec. 6662 (the accuracy-related penalty), sec. 6663 (the fraud penalty—equal to 75% of the portion of the underpayment attributable to fraud), and sec. 6664 (setting forth definitions of terms used in secs. 6662 and 6663). OBRA sec. 7721(a), (c)(1). The word "underpayment", used in sec. 6662 (and sec. 6663), is defined by sec. 6664(a). Secs. 6662(a), 6663(a). The 1988 amendment modifying the definition of "deficiency" remained in the Code, but after 1989 it no longer expressly affected the definition of "underpayment". This is because in 1989 the definition of "underpayment" was detached from the definition of "deficiency". *See Feller v. Commissioner*, 135 T.C. at 507–508 ("The definition of an underpayment is no longer tied to the definition of a deficiency under section 6211, as it had been in section 6653(c)".). Despite the detachment of the definition of "underpayment"

Continued

"tax shown" on Rand and Klugman's return should be reduced to –$7,327. This is the opposite of what the Court holds. The Court holds that the "tax shown" on the return in underpayment calculations cannot be negative. And it holds that the "tax shown" on Rand and Klugman's return is zero. The Court's holding, whatever its other merits, is not supported by the Ways and Means Committee report.

The fourth problem with the Court's reliance on section 6211(b)(4) in defining "tax shown" (for purposes of an underpayment) is that the approach relies too heavily on principles of statutory construction. Recall that the Court's reasoning employs not one, but two principles of statutory construction: the principle that the same phrase means the same thing wherever it appears in the statute and the principle that all statutory phrases must be given effect. It has been recognized that principles of statutory construction rest upon the assumption that Congress is all-knowing. *See, e.g.*, *Edwards v. United States*, 814 F.2d 486, 488 (7th Cir. 1987). Thus, for example, when Congress uses the same phrase in a statute, it is assumed to do so deliberately because it knows the phrase will be construed the same way wherever it appears. This assumption can give rise to inaccurate readings, especially where, as here, two principles of statutory construction are chained together. For example, it may be reasonable to assume that, in using the phrase "tax shown" in sections 6664 and 6211, Congress intended that "tax shown" would carry the same meaning in both sections; however, it seems inherently less reasonable to assume further that Congress intended for section 6211(b)(4) (defining "deficiency") to be relied upon to define "tax shown" (as used in defining "underpayment"). The Court's chain of reasoning seems especially suspect in the light of Congress's express intent to separate the definition of underpayment from the definition of deficiency. *See* op. Ct. p. 391.

Finally, the majority contends that its holding, which occasions a puny $29 penalty for Rand and Klugman's false claim for $7,471 in tax credits, does not result in a gap in the pen-

from the definition of "deficiency", a report of the House Ways and Means Committee asserted that the definition of "underpayment" under the 1989 amendments was "not intended to be substantively different" from previous law. H.R. Rept. No. 101–247, at 1394 (1989), 1989 U.S.C.C.A.N. 1906, 2864.

alty regime because there are penalties for false or excessive claims for credits found in section 32(k) and section 6676. Section 32(k), enacted in 1997, provides that a false claim to the earned income credit for one tax year results in the denial of the earned income credit for the next two tax years "[if] there was a final determination that the taxpayer's claim of credit * * * was due to reckless or intentional disregard of rules and regulations".[6] Many taxpayers who falsely claim the earned income credit for one year will not qualify for the credit for the subsequent two years anyway. Rand and Klugman, for example, claimed earned income credits for 2006, 2007, and 2008, even though, as they have now stipulated, they were not entitled to the earned income credit for any of the three years. For such taxpayers as Rand and Klugman, section 32(k), even if applicable,[7] deprives them of nothing to which they would otherwise be entitled. It is doubtful that Congress intended section 32(k) to be the only penalty potentially applicable to false refund claims related to earned income credits.

Section 6676, enacted in 2007, imposes a 20% penalty on overstated claims to various types of credits, including the additional child tax credit and the recovery rebate credit.[8] It is unlikely that Congress thought the section 6676 penalty was a sufficient (or exclusive) penalty for returns that seek refunds based on false claims of tax credits. First, the section 6676 penalty does not apply to claims to the earned income credit.[9] *See* sec. 6676(a). Second, the percentage of the sec-

[6] The period of disallowance is 10 years if the claim of credit is due to fraud.

[7] Sec. 32(k) is conditioned upon "reckless or intentional disregard of rules and regulations." Sec. 6662 is not. *See* sec. 6662(b)(2).

[8] The Court seems to take the IRS to task for failing to assert the sec. 6676 penalty against Rand and Klugman. The opinion states: "Such a penalty might have applied here, if respondent [the IRS] had asserted it." *See* op. Ct. p. 395. However, the record does not disclose whether the IRS has asserted a sec. 6676 penalty. This is not surprising. The present proceeding is a deficiency proceeding under sec. 6214. In a deficiency proceeding the Tax Court does not have authority to redetermine a taxpayer's liability for a sec. 6676 penalty, which the IRS can assess without a notice of deficiency. *See* sec. 6671(a).

[9] It is the earned income credit that makes up the largest portion of the refundable tax credits claimed by Rand and Klugman on their 2008 return. They claimed an earned income credit of $4,824, an additional child tax

Continued

tion 6676 penalty is only 20%; however, the penalty related to fraudulent returns is 75%. Sec. 6663(a). Under the Court's approach, a claim for a refund, even if fraudulent, is not subject to the 75% fraud penalty. It seems improbable that Congress intended such behavior to be so lightly penalized. Third, the section 6676 penalty applies to "a claim for refund or credit" whether or not made on a return. Thus, the section 6676 penalty covers more taxpayer submissions to the IRS than the section 6662 and 6663 penalties, which are confined to returns.

In addition, the Court asserts that Congress's exemption of the earned income credit from section 6676 shows its intent that the section 6662 penalty does not reach improper refund claims relating to the earned income credit. *See* op. Ct. p. 395. It says: "And it appears that Congress intended that the two-year bar be in lieu of any other monetary sanctions. For example, the penalty under section 6676 for an erroneous claim for refund specifically excludes a claim for refund relating to an erroneous earned income credit." *See id.* I disagree. In enacting section 6676 in 2007, Congress may have understood that false refund claims relating to the earned income credit were already governed by the forfeiture penalty under section 32(k) enacted in 1997, the 20% penalty under section 6662, *and* the 75% penalty under section 6663 (if fraudulent). It may have thought that the potential applicability of these penalties would be sufficient.

COLVIN, *J.*, agrees with this dissent.

---

credit of $1,447, and a recovery rebate credit of $1,200.